Rowley v. Jewett.

## ROWLEY v. JEWETT.

1. **Bond:** FOR DELIVERY OF ATTACHED PROPERTY: WHO MAY ENFORCE. Under section 2787 of the Revision an attachment plaintiff or his assignee may maintain an action on a delivery bond.

2. ——: ——: INTERLINEATION IN. An interlineation in a delivery bond giving a description of the attached property, made in good faith by the officer to whom the bond is presented for acceptance, at the request of the principal in the bond, is not a material alteration and will not release a surety from liability thereon.

3. ——: ——: SURETY. A surety in a bond, who releases property held by him as indemnity upon the statement of the obligee that he has received payment of the amount secured by the bond, is released from liability thereon only to the extent of the value of the property released, which it is incumbent on him to establish. BECK, J., *dissenting*.

*Appeal from Polk Circuit Court.*

MONDAY, JUNE 20.

HOYT SHERMAN sued out an attachment against one Stamper, which was placed in the hands of the plaintiff for service, and he thereunder attached certain personal property belonging to said Stamper. Whereupon the latter and the

defendant as his surety executed to the sheriff the delivery bond upon which this action was brought. It was alleged in the petition that Sherman had obtained judgment, and that neither Stamper or the defendant had delivered said property to the sheriff as required by the conditions of the bond, but had wholly failed, although often requested to do so, and that the sheriff being liable to produce said goods or satisfy said judgment, and the plaintiff being liable to account to the sheriff for his acts in the premises, and to pay said bond, * * did himself pay off and satisfy said judgment. * * " The allegations of the petition were denied by the defendant, and the trial was to the court. Judgment for the plaintiff, and defendant appeals.

*Barcroft, Given & McCaughan,* for appellant.

*Phillips, Goode & Phillips,* for appellee.

SEEVERS, J.—I.  The evidence warranted the Circuit Court in finding the plaintiff purchased the judgment of Sherman, and the same was duly assigned to him. This being so, the plaintiff, we think, became thereby vested with all the rights of Sherman as to the enforcement or collection of the judgment. If, therefore, Sherman could maintain and resort to an action on the bond to enforce the collection of the judgment before the assignment the plaintiff could do so afterward.

1. BOND: for delivery of attached property; who may enforce.

It is provided by statute that " when a bond * * given to any officer * * is intended for the security of * * particular individuals suit may be brought thereon in the name of the person intended to be thus secured, * * " Code, § 2552. This section in substance was copied from Rev. § 2787, and is literally the same as § 1893 of the Code of 1851. The bond sued on was given when § 3219 of the Rev. was in force. This last section in substance is the same as § 1876 of the Code of 1851. It will be seen the statutes in force now, when the bond was given, and when *Sheppard &*

*Morgan v. Collins*, 12 Iowa, 570, was decided, are in substance the same, and it was held in that case, which was a suit on a bond of the same character as the one sued on, that such bond was given for the security of the plaintiffs in attachment, and they could maintain an action thereon. We are not disposed to depart from the construction of the statute adopted in the cited case. It follows, therefore, that Sherman could have maintained an action on the bond, and this the plaintiff may do as the assignee of the judgment.

It is immaterial what constituted or was the inducing cause that moved the plaintiff to purchase and procure an assignment of the judgment. He nevertheless is the owner thereof and entitled to the rights of such. It is possible that evidence tending to show the purchase and assignment was inadmissible under the allegations of the petition, but no objections were made thereto. Had there been, no doubt if deemed necessary the plaintiff would have amended his petition.

II. The bond is of a penal character, and at the time it was signed by Stamper and the defendant was conditioned as follows: "The condition of the above obligation is such that the said sheriff did on or about the twenty-first day of November, 1870, attach the furniture and photographic outfit of said F. M. Stamper to satisfy a claim * * * in favor of Hoyt Sherman. We obligate ourselves * * to cause said attached goods or their value to be delivered to said sheriff within twenty days after the rendition of any judgment in favor of Hoyt Sherman on the above claim against said property.

2. ——: ——: interlineation in.

Stamper presented this bond to the plaintiff, and before he accepted it the plaintiff in good faith, with honest intent and at the request of Stamper, for the purpose of identifying the property attached, interlined therein immediately after the name "Stamper" the following, " consisting of six sofa chairs, one settee, one round table, one clock, one mirror, one

show case, one piece of carpet containing forty-nine yards, twenty large pictures and frames, and one half-size camera."

The defendant insists there was another interlineation, but as to this there was a conflict in the evidence. We therefore cannot find it to be true.

When the bond was thus interlined and delivered the attached property was released. The interlineation described the property in the precise terms of the return on the attachment.

The interlineation was made without the knowledge or consent of the defendant, and his counsel insist the bond by reason thereof is void as to him.

We are of opinion the legal effect of the bond was not changed by the interlineation. No one obtained any advantage, nor was any one injured thereby. If it had not been made the property could have been readily identified by the return on the attachment, and this was the property the obligors bound themselves to return to the sheriff. When described in the bond as was done by the interlineation its effect may have been to make additional evidence of the property attached. If so, such was not the intent of either Stamper or the plaintiff, and if such was the intent it does not follow the bond for this reason was rendered void. *Adams et al v. Frye*, 3 Met., 103.

As the interlineation was not material, and did not affect the operation of the bond or the rights of the parties, and was not made with any wrong or fraudulent intent, but in good faith, it should not render the bond void. Such is the rule in this State, and is believed to be in accordance with the weight of modern authority. *Robinson v. Phœnix Insurance Co.*, 25 Iowa, 430; *Briscoe v. Reynolds*, 51 N. C., 73.

III. At the time the defendant signed the bond Stamper gave him a "three-spring wagon" to make good any loss "he might sustain on the bond." The defendant had a conversation with Sherman and asked him

3. ——: ——: sureties.

if " those Stampers had settled this matter, and the answer was, it is all paid: I have got my money."

Counsel for defendant insist because of the foregoing facts he is wholly discharged, although no evidence was introduced tending to show the value of the wagon, or that the defendant in consequence of what Sherman said made no efforts to indemnify himself from loss, or that he could then have obtained further indemnity.

The question for determination is whether the defendant was wholly discharged or only to the extent of the value of the property surrendered. In *Harris v. Brooks*, 21 Pick., 195, there was evidence tending to show the holder of the note informed the surety he would look to the principal, and that the surety need not give himself any further trouble about the note, for he should not be injured.

The court instructed the jury if, in consequence thereof, the surety omitted to take up the note, and secure himself out of the property of the principal, he was discharged.

The instruction was approved, the stated ground being " that it lulls the party into security and prevents him from obtaining indemnity, and it would be a fraud on the part of the holder after making such assurances to call upon the surety."

This case was followed by *Carpenter v. King*, 9 Met., 511, the facts being substantially the same. To the same effect is *Thornburgh v. Madren*, 33 Iowa, 380. As sustaining the conclusion in the last case, *Chambers v. Cochran & Brock*, 18 Iowa, 187, is cited, in which Dillon, J., at some length, discussed the question before the court, and from an examination of the authorities, reaches the conclusion: " If the creditor admits to the surety that he is paid this admission is conclusive, provided the surety *acts upon it*, and would be made to suffer by the creditors controverting the truth of the admission," and that if the " surety relying upon this conduct, and these acts of the plaintiff, had relinquished securities, or failed to obtain security, or had otherwise been dam-

nified it would to the extent of such damage have been a discharge." This is in accord with *Brubaker v. Okeson*, 36 Pa. St., 519; *Driskill v. Maters*, 31 Mo., 525.

The rule, therefore, seems to be if the surety has been lulled into security by the acts and conduct of the creditor, and in consequence thereof fails to obtain indemity or make an' effort to do so, he is wholly discharged, but if he only surrenders certain property held by him as collateral security to the principal debtor, and has not been otherwise damaged, he is discharged only to the extent of the value of the property surrendered. The defendant is brought within the last rule only.

As the value of the wagon was not shown it cannot be said the defendant has been damaged except nominally. The judgment should not be reversed because such damages were not allowed, if it be conceded such was not done. *Watson v. Van Meter*, 43 Iowa, 76.

AFFIRMED.

BECK, J., *dissenting*.—I cannot concur in the foregoing opinion of the majority of the court. I have not the time to enter into an extended discussion of the point upon which I differ from the other justices, and must content myself with a brief statement of my conclusions.

The opinion of the majority concedes that the plaintiff stands in the shoes of Sherman. I reach the conclusion, however, upon this ground, that, inasmuch as defendant acted upon the declaration of Sherman that the judgment had been paid, in surrendering the spring wagon, plaintiff is estopped to deny the payment of the judgment. The doctrine of estoppel being applicable to the case, we will not inquire what was the value of the property surrendered. If of any value it supports the estoppel.

The case differs from cases wherein the creditor surrenders property held as security for the debt for which the surety is bound. The surety in such cases can claim nothing more

than that the debt be regarded as paid *pro tanto*, to the extent of the value of the security surrendered. In this case the estoppel compels us to regard the whole debt as paid— that is, the declaration of the creditor that it is paid cannot be denied. In my opinion the authorities support the conclusion I have announced. See *Carpenter v. King*, 9 Met., 511, and notes to this case by Hare & Wallace, found in 2 American Leading Cases, pp. 380, 423, 434, 425, and authorities cited. The doctrine of estoppel may be invoked to protect a surety in an action at law, the same as in chancery. *Carpenter v. King, supra;* Leading Cases in Equity, Hare & Wallace's notes, p. 546.