JAMES CRAWFORD, by his Next Friend, Appellant, v. NELS BERGEN.

**Slander: Justification.** Where evidence tended to show that plaintiff cut harness belonging to the defendant's father and was seen then leaving the father's granary, and that granary soon after was found to be on fire, *Held,* that in an action accusing plaintiff of setting said fire, a verdict for defendant will stand. Plaintiff was, at any rate, entitled to nominal damages, only, and a failure to award such is not ground for reversal.

**Assault: Question for Jury, When.** Whether a mere touching of the person is assault and battery, was, in this case, properly sent to the jury.

**Plea of Guilty Not Conclusive in Civil Suit.** Pleading guilty of assault and submitting to a nominal fine does not prevent showing in a suit for the assault that defendant was not guilty of it.

*Appeal from Winnesheik District Court.*—HON. W. A. HOYT, Judge.

MONDAY, OCTOBER 8, 1894.

ACTION at law to recover damages for an alleged assault and battery and for slander. There was a trial

by jury, which resulted in a verdict and judgment for the defendant. Plaintiff appeals.—*Affirmed.*

*John B. Kaye* for appellant.

*G. R. Willett* and *Nels Kessey* for appellee.

ROTHROCK, J.—The petition was in three counts. The first count charged an assault and battery. The second was for charging the plaintiff with setting fire to certain hay, which, with other property belonging to defendant's father, was burned. The third count was for falsely charging the defendant with stealing, destroying and injuring certain meat in the cellar of the defendant's father. No consideration of the claim under the third count is necessary. The jury was fully warranted, under proper instructions from the court, in returning a verdict for the defendant on that count, upon the ground that the evidence showed that the defendant did not make the charge or utter the words substantially as averred in the petition.

I. It appears in evidence that the families of Crawford and Bergen are neighboring farmers. The defendant, who is a son of the elder Bergen, married one of the Crawford daughters. The plaintiff is a minor son of Crawford. For some time before the commencement of this suit there was bad feeling between the families. Someone entered Bergen's cellar and destroyed a quantity of meat. Some time afterward Bergen's granary was entered and harness therein was cut and injured, and a fire was kindled in the granary. This was in the early part of the day. The fire was extinguished. Afterward, and on the same day, another fire was set out by someone, and a large quantity of hay and oats in stack, and corn cribs and other buildings, were destroyed. The plaintiff and the defendant met at the fire. The plaintiff arrived first, and the injuries of which he complains occurred when

the defendant arrived.   He claims that the defendant took hold of him with both hands and choked him, and charged him with burning the property.   The defendant claims that he believed that the plaintiff cut and injured the harness in the morning and kindled the fire under the granary, and that he had good reason to so believe, and that, being under a great state of excitement by reason of the destruction of his father's property, he did place his hand on the defendant's shoulder and asked him if he felt better after he had set the fire.   He claimed in his answer that he was justified in saying what he did say in regard to setting out the fire, and he pleaded the facts "in both mitigation and justification."   The circumstances pleaded were that he had been informed by his father's family that the plaintiff was discovered in the act of cutting and injuring the harness.   There can be no doubt the facts related to him, if believed by the defendant, were sufficient to authorize him in the conclusion that the same person who cut the harness set the fire under the granary, and also the fire set out which destroyed so much property.

These facts were that a young girl, a member of the Bergen family, stated that she saw the plaintiff in the act of cutting the harness, and that, upon being discovered, he ran away from the premises.   That this was not a mere suspicion is shown by the fact that this girl was a witness on the trial, and testified as follows: "Am thirteen years old.   Live in Madison township. Know Mr. Bergen, James, and all the Crawford people. Know the lady that was on the stand before me.   I testified here once before.   I remember the fire at father's place in September, 1891.   I remember I was at home that morning.   Father—the father that took me—was there, and Isabel.   I remember of seeing a man going into the granary that morning.   He shut the door.   Mother told me to go out, and see who it

was. I went and opened the door, and saw James Crawford there, cutting the harness. Didn't see any matches on the floor about that time. He ran away. He went off from there. I went back to mother, and told her that I had seen a man, James Crawford. He was cutting harness. I told my mother, and she sent me to Albert's. I saw a fire that morning before I went to Albert's, under the granary. Q. What did you do? Get some water, and put it out? (Objected to by plaintiff's counsel as leading. Sustained. Defendant excepts.) Q. What did you do? A. Mother told me to put it out, and I put it out with water. I saw James Crawford's team that morning by the track, —the railroad track. Don't know whether they were tied to the fence or not. I saw James Crawford go away from the granary that morning." The testimony of this witness was corroborated to some extent by that of Mrs. O. N. Bergen, the mother of the defendant. It will be observed from an examination of this evidence that the jury was fully warranted in finding that the defendant was justified in the belief, as much as he could be by information from others, that the plaintiff was guilty of setting fire to the property. And there is a very decided preponderance of evidence to the effect that the defendant did not choke the plaintiff. One witness expresses it thus: "He did not strike him, nor kick him; did him no harm only to lay his hand on his shoulder." Others testified to the same effect. The court correctly instructed the jury as to what acts constituted an assault and battery, and we think that, under all the circumstances disclosed in evidence, it was a fair question for the jury whether the touching of the person of the plaintiff should be regarded as an assault and battery.

II. It appears from the record that immediately after the affair the plaintiff went before a justice of the

peace, and procured a warrant against the defendant for an assault and battery. The warrant was served on the defendant the next day, at the place where the fire occurred, and before it was entirely extinguished, and while the defendant was guarding the premises. He went with the officer who served the warrant to a justice of the peace, and pleaded guilty, and was fined five dollars. This fact was introduced in evidence, and some question is made as to the effect of the plea of guilty. The court, in the charge to the jury, in effect treated, the plea of guilty as an admission of guilt, but not conclusive. This ruling of the court is questioned by counsel for the plaintiff. We think there was no error in holding that the plea of guilty was not conclusive upon the defendant. See 1 Greenl. Ev., note to section 537. A party charged with a mere technical infraction of the criminal law may well submit to a nominal penalty upon a plea of guilty, to avoid expense and loss of time in a trial, and there is no reason why he may not be permitted to show, upon the trial of a civil action for damages, that he was not in fact guilty of any offense. See, also, Phil. & A. Ev. 523, note 4; *Clark v. Irvin*, 9 Ohio, 132. The admission of guilt should be held to apply to that trial only, because the parties are not the same, and the rules of practice and course of proceeding are different.

III.    We have recited the facts of this case sufficiently to make it plain that the offense with which the defendant was charged, if an offense at all, was the merest technical violation of law, and that the words spoken were uttered under such circumstance as that no jury would be warranted in finding the defendant liable for more than merely nominal damages. It is a well established rule that an omission to assess nominal damages where there is a mere technical right to recover, is no ground for a new

trial. *Watson v. Van Meter*, 43 Iowa, 76. And a fail-
ure to award nominal damages where a plaintiff is en-
titled to no more is not sufficient ground for reversing
a judgment. *Portman v. Klemish*, 54 Iowa, 198, 6 N.
W. Rep. 265; *Rowley v. Jewitt*, 56 Iowa, 492, 9 N. W.
Rep. 353; *Phenix Ins. Co. v. Findley*, 59 Iowa, 591, 13
N. W. Rep. 738; *Wire v. Foster*, 62 Iowa, 114, 17 N.
Rep. 174.

IV. We have disposed of the questions involved
in this appeal so far as they appear to us to be material.
There are a great many objections urged to the rulings
of the court upon the admission and exclusion of evi-
dence. We discover no real foundation for any of
these complaints. The same may be said of the objec-
tions to the instructions of the court to the jury. A
mere statement of these objections would show that
they are not well taken, and we must decline to enter
upon a discussion of them. The judgment of the dis-
trict court is AFFIRMED.