MARY E. HARVEY, Appellant, v. THE MASON CITY & FORT DODGE RAILROAD COMPANY, Appellee.

**Principal and agent:** AUTHORITY OF AGENT. An agent authorized
1 simply to lease and generally look after his principal's land, has no authority to construct ditches thereon for the purpose of draining his own adjacent land, and his acts in respect thereto are not binding on his principal.

**Drainage:** DAMAGES: CONTRIBUTORY NEGLIGENCE. In an action for
2 damages caused by an overflow of surface water the result of an insufficient outlet, the fact that plaintiff constructed ditches draining her land in the direction of the outlet did not affect her right of recovery, in the absence of a showing that the collection of water at that point was thereby augmented; and the question of such increased accumulation of water was one of fact for the jury.

**Drainage:** DUTY OF RAILWAY COMPANY: DAMAGES: EVIDENCE. It is the duty of a railway company to provide a drain through its right of way sufficient to carry off the surface water collecting at that point, and failure so to do will render the company liable for injury resulting therefrom. Evidence held sufficient to show an actionable injury.

**Permanent and continuing injuries:** RECOVERY OF DAMAGES. Where the injury caused by draining surface water is of a permanent character to real property and will continue indefinitely unless a change is effected by human labor, the damage is permanent and recoverable once for all, and is measured by the decrease in the fair market value of the property; but where the injury is of a recurring character the damage is ordinarily continuing and one recovery is no bar to successive actions for damages accruing from the same wrong.

**Same.** The injury arising from an occasional flooding of land by reason of an insufficient opening through a right of way is not permanent but continuing, but if the cause is tried on the theory that it is permanent the parties will be bound by the judgment.

**Same.** The recovery of damages from an occasioned overflow of surface water by reason of an insufficient outlet is confined to the injury actually suffered.

**Overflow from surface water:** MEASURE OF DAMAGES. The rule for determining the damages for an injury to real property, caused by an overflow of surface water, is somewhat flexible, but in this state it is held to be the difference between the fair market value of the premises immediately before and immediately after the injury.

**Nominal damages.** In an action for damages caused by an overflow of surface water, even though no actual injury was shown, yet if by reason of defendant's negligent act plaintiff's land was overflown, she was entitled to nominal damages and to have the case go to the jury for that purpose.

**Same.** Where a finding of only nominal damages carries with it a determination of some right or interest in real property, a refusal to allow such damage is reversible error.

*Appeal from Calhoun District Court.*— HON. Z. A. CHURCH, Judge.

THURSDAY, JANUARY 18, 1906.

ACTION at law to recover damages. There was judgment for defendant, and plaintiff appeals. The material facts are stated in the opinion. *Reversed.*

*Gray & Gray* and *Frick & Crandall,* for appellant.

*Healy Bros. & Kelleher* and *E. C. Stevenson,* for appellee.

WEAVER, J.— The plaintiff is and for many years has been the owner of a quarter section of land in Calhoun county, Iowa. The land is somewhat low and in its natural condition there is a shallow pond or slough of some ten or fifteen acres in extent near the western boundary. The natural slope and drainage of most of the quarter section and of some of the adjacent lands is in the direction of this pond, the outlet of which was to the west across the highway bounding the tract on that side. In the year 1902 the defendant company, by condemnation or by purchase, secured a right of way and constructed its railroad across the farm and through the pond near its outlet substantially as shown upon the accompanying diagram.

The track across the premises is laid upon an embankment or fill at a height of about six feet above the pond. In constructing the roadbed defendant attempted to provide for the escape of the drainage from the pond in the direction of its natural flow by putting in a tile culvert. The tile is twenty-four inches in diameter laid at the bottom of the fill, the exposed ends being reinforced and strengthened by cement work. There is no suggestion on part of the defendant that this culvert was intended as a temporary make-shift, or that it desires or proposes to substitute another of other material or of greater capacity. On September 25, 1903, plaintiff instituted this action. In addition to the matters hereinbefore stated, her petition alleges that the culvert which we have described is wholly insufficient to carry off the water which would otherwise escape in that direction in times of flood, and that by reason of its incapacity the water has been set back, causing injury to her land and crops, for which she seeks a recovery in damages. The defendant answered in denial. There were other counts in the petition presenting other claims on which issue was joined, but none of these latter issues are involved in this appeal, and we shall dispose of it as if the claim first mentioned was the only one considered in the court below.

At the close of the testimony on part of plaintiff, the defendant presented a motion for a directed verdict in its favor on the grounds (1) that no proper proof of damages had been offered by the plaintiff; and (2) that plaintiff by herself or by her agent had contributed to the injury for which she was asking damages. The motion was sustained, and it is from the judgment entered upon the directed verdict that plaintiff appeals.

The record shows that the court below, throughout the course of the trial, consistently ruled that the measure of the plaintiff's damages, if any, was the difference between the value of her land with a good and sufficient culvert through the railroad embankment and the value of the same land

with the culvert as constructed, and considerable testimony in support of her claim of damages on that theory was given to the jury. From this circumstance we conclude that the ruling upon the motion for a directed verdict, though general in form, was in fact based upon the second ground therein specified; that is, that plaintiff could not recover because of her own contribution to the injury of which she complained. However, as both propositions are insisted upon by the appellee in this court, and as both have been argued by counsel, we shall proceed to their consideration.

I.    Beginning with the last proposition above referred to, let us inquire whether there was such a showing of contributory negligence or fault on the plaintiff's part as to justify the court in holding as a matter of law that she was not entitled to recover.

The testimony shows that plaintiff is a resident of Illinois, and has never been in actual occupation of the land. The quarter section immediately east of the plaintiff's land

1. PRINCIPAL AND AGENT: authority of agent.

is owned by her brother, who is also a resident of Illinois. This brother appears to have had authority from plaintiff to lease her land and look after her interests therein in a general way, and he has occasionally made brief visits to the neighborhood. It appears that in the summer of 1903, shortly before the commencement of this action, plaintiff's brother had one or two tile ditches made on his own land, and to effectuate the drainage extended them down upon or across his sister's land in the direction of the pond of which mention has been made. Some years prior to the construction of the railroad an open ditch had been constructed from the land owned by one Brown immediately to the north of plaintiff's land, draining into or in the direction of the pond. A tile ditch also extends from the land of Brown on the west side of the railroad, discharging its waters into the borrow pit or ditch on the right of way; but these waters, as we understand the situation, do not affect the flooding of the land on the east

side of the fill. It is the claim of the defendant company
that the facts above recited show without dispute that plain-
tiff has contributed to the flooding of her own land and is
therefore without remedy. We think this position cannot be
sustained. In the first place, there is no showing whatever
that the extension of the ditches from the land of her brother
across the premises was by plaintiff's authority, or with her
knowledge or consent. It is true that her brother was her
agent, and generally speaking she would properly be held to
have notice of and be bound by his dealings with others in
reference to the leasing or management of her land; but his
agency, so far as the record discloses its character, gave
him neither implied nor apparent authority to construct a
ditch upon her land for the benefit of his own.

But, even if we assume that the ditches were cut by
him with the consent of plaintiff, there is the further insuper-
able objection to the order of the court that there is no such
clear and satisfactory showing of any injurious
result therefrom as to authorize the court to
withdraw the case from the consideration of the
jury. It is not shown, certainly not clearly shown, that any
water was brought to the pond which did not naturally drain
in that direction. Indeed, the pond seems to be the natural
catch-basin of the surface drainage of a considerable area of
land to the east and north, and unless it be made to appear
that by the acts of the plaintiff, done or permitted since
the construction of the railroad, the volume of water to be
discharged through the culvert augmented the alleged floods
beyond the amount or quantity which otherwise would have
drained in that direction, and thereby contributed to the in-
jury for which she seeks to recover from the defendant, her
right to damages is in no manner affected by the construction
of the ditches. Whether any such results did follow from acts
done or permitted by the plaintiff was clearly a question of
fact upon which plaintiff was entitled to the verdict of the

2. DRAINAGE:
damages:
contributory
negligence.

jury.   See *Schrope v. Trustees,* 111 Iowa, 113; *Collins v. Keokuk,* 91 Iowa, 293.

In leaving this branch of the case it is well to suggest that we have discussed the matter of plaintiff's alleged contribution to the injury to her land upon the theory adopted by counsel in argument; but we do not wish to be understood as conceding that the doctrine of contributory negligence has any proper application to actions like the one now before us.   See *Randolf v. Bloomfield,* 77 Iowa, 50; *Correll v. Cedar Rapids,* 110 Iowa, 336.

II.   The nature and extent of the legal rights of adjacent landowners in respect to surface waters and drainage, and the measure of damages to be assessed for a violation of those rights, have been the subject of much and varied litigation from an early day in the world's civilization.   Increase in land values and increased necessity to make the soil yield the largest possible return to its owner contribute to make the subject one of continually growing importance, but unfortunately for the best interests of society there is perhaps no question of law not settled by statutory enactment upon which there exists a greater confusion of authorities.   But in the case now before us no question is raised as to the obligation of the defendant company to provide a suitable and sufficient opening through its embankment for the escape of the water from plaintiff's premises at the place of its natural outlet or discharge, the contention on behalf of the company being that plaintiff offered no proof of injury to her land by reason of the insufficiency of the culvert; and, if this point be overruled, it is further contended that there is an entire failure of evidence as to the damages, if any, resulting to the plaintiff.   This state of the record renders it unnecessary for us to go into any examination of the authorities as to plaintiff's right to demand an exit for the surface drainage of her land across the defendant's right of way; but, taking the right for granted, we are to inquire

*Margin note: 3. DRAINAGE: duty of railway company: damages: evidence.*

whether there is any testimony tending to show a violation thereof on part of the defendant, and if a violation, whether there is any showing of damage which should have been submitted to the jury.  If the witnesses testifying in the case can be believed, there can be little, if any, doubt that the 24-inch tile culvert provided by the defendant was wholly insufficient to afford reasonably prompt passage for the water seeking outlet there in times of heavy or long-continued rainfall.  The admitted facts as to the topography and formation of the land in that vicinity, a large area of which sloped to this point as a common outlet for its surplus waters, amply corroborate and uphold the statement of the witnesses in this respect.  It is shown with equal clearness that by reason of the insufficiency of the culvert the water was at times dammed against the railway embankment and flooded back over a considerable portion of plaintiff's land, interfering materially with its use and destroying the grass. There is no merit, therefore, in defendant's claim that no actionable injury to plaintiff's premises was shown.

The one debatable question presented in argument is as to the measure of plaintiff's damages.  It has quite frequently been held that damages for injury of a permanent

**4. PERMANENT AND CONTINUING INJURIES: recovery of damages.** character to real property, and especially where the wrong complained of is in the nature of a nuisance, which will continue indefinitely without change from any cause but human labor, are recoverable once for all, and that ordinarily the measure of such recovery is the decrease in the fair market value of the property on account of such injury.  *Troy v. R. R.,* 3 Fost. (N. H.) 83, 55 Am. Dec. 177; *Powers. v. Council Bluffs,* 45 Iowa, 652; *Bizer v. Ottumwa H. P. Co.,* 70 Iowa, 145.  In such case the damages are said to be original.  But where the injury from the alleged nuisance is temporary in its nature or is of a continuing or recurring character, the damages are ordinarily regarded as continuing, and one recovery against the wrongdoer is not a bar to successive

actions for damages thereafter accruing from the same wrong. Powers v. Council Bluffs, *supra; Beatrice Gas Company v. Thomas,* 41 Neb. 662, (59 N. W. Rep. 925, 43 Am. St. Rep. 711); *Brewing Co. v. Crompton,* 142 Ill. 511, (32 N. E. Rep. 693, 18 L. R. A. 390, 34 Am. St. Rep. 92); *Irrigation Co. v. Middaigh,* 12 Colo. 434, (21 Pac. Rep. 565, 13 Am. St. Rep. 234); *Pettit v. Grand Junction,* 119 Iowa, 352.

The principle upon which a party creating a continuing nuisance is held liable to successive actions for damages is that he has a legal right and is under legal obligation to remove, change, or repair the structure or thing complained of, and thereby terminate the injury to his neighbor; and, failing so to do, each day's continuance of the nuisance is a repetition of the original wrong, and a new action will lie therefor. *Railroad v. Mihlman,* 17 Kan. 231; *New Salem v. Mill Co.,* 138 Mass. 8; *Colrick v. Swinburne,* 105 N. Y. 503, (12 N. E. Rep. 427). If the structure or thing complained of is of a lasting character, though perhaps not strictly permanent according to the ordinary definition of the term, it has also been held that the person injured may elect to treat it as permanent and recover original damages, and a judgment obtained in an action tried upon that theory will operate as a bar to any further claim for damages on account of the continuance of the nuisance. *Aldworth v. Lynn,* 153 Mass. 53, (26 N. E. Rep. 229, 10 L. R. A. 210, 25 Am. St. Rep. 608); *Ridely v. Railroad,* 116 N. C. 923, 20 S. E. Rep. 962, 32 L. R. A. 708; *White v. Railroad Co.,* 113 N. C. 610, (18 S. E. Rep. 330, 22 L. R. A. 627, 37 Am. St. Rep. 639); *Fowle v. New Haven & Northampton Co.,* 112 Mass. 334, (17 Am. Rep. 106). And see *Hollenbeck v. Marion,* 116 Iowa, 69; *Noe v. Railroad,* 76 Iowa, 362; *Hodge v. Shaw,* 85 Iowa, 137. The confusion which is found in the precedents has arisen not so much from the statement of governing principles as from the inherent difficulty in clearly distinguishing injuries which are original and perma-

nent from those which are continuing, and in assigning each particular case to its appropriate class.

In *Powers v. Council Bluffs*, 45 Iowa, 652, this court cited with approval the definition of permanent injury given in *Troy v. Railroad Co.*, 3 Fost. (N. H.) 83, (55 Am. Dec. 177): "Whenever the nuisance is of such character that its continuance is necessarily an injury, and where it is of a permanent character that will continue without change from any cause except human labor, there the damage is an original damage, and may be at once fully compensated." This definition we still think correct, but a failure to carefully construe and apply it has led to some apparent inconsistencies in this and some other courts. It will be observed from a reading of the quoted paragraph that the term "permanent," so often made use of in connection with the right to recover original damages, has reference not alone to the character of the structure or the thing which produces the alleged injury, but also to the character of the injury produced by it. In other words, the structure or thing producing the injury may be as permanent and enduring as the hand of man can make it, yet if the resulting injury be temporary or intermittent, depending on future conditions which may or may not arise, the damages are continuing, and successive actions will lie for successive injuries. This thought, which is clearly implied in the quoted definition, is further elaborated in the same case (Troy v. Railroad Co., *supra*) as follows: "But where the continuance of such act is not necessarily injurious, and where it is necessarily of a permanent character, but may or may not be injurious, or may or may not be continued, then the injury to be compensated in a suit is only the damage that has happened." Stating the same rule in somewhat different form, it has also been said that "when such structure is permanent in its character and its structure and maintenance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened, and there can be as

many successive recoveries as there are successive injuries."
*Railroad Co. v. Biggs,* 52 Ark. 240, (12 S. W. Rep. 331, 6
L. R. A. 804, 20 Am. St. Rep. 174).

In a note to the same case in 20 Am. St. Rep. 176, Mr.
Freeman gives it as the consensus of the authorities that
" when the original act creating a nuisance to land is perma-
nent in its nature, and is at once productive of all the damage
which can ever result from it, and at once destroys the estate
for all practical purposes, so that when the act is completed
all the damage that can be effected thereby is consummated,
the entire damages must be recovered in one action, and the
statute of limitations begins to run against the cause of
action from the time of the complete erection of the nui-
sance." In support of this proposition the annotator cites
several of our own cases. Possibly as good an illustration
of the distinction as can be suggested is in the case of the
construction of a milldam across the course of a stream.
So far as the dam operates to permanently overflow the land
of another and take away from the owner all beneficial use
of his property, the damage may be treated as original and
all recovered in one action but so far as it may cause only
a periodical or occasional flooding the damage is continuing
and successive recoveries can be had. *Bizer v. Ottumwa H.
P. Co.,* 70 Iowa, 145; *Close v. Saum,* 27 Iowa, 503; *Gibson
v. Fischer,* 68 Iowa, 29; *Watson v. Van Meler,* 43 Iowa, 76.
Not keeping in mind this distinction between the perma-
nent character of the cause and the resultant injury, the
court has been led in a few instances to appear to make the
former the sole test whether the damages in question were
original; but we think this has never been done where the
question here presented has been raised and considered.
More frequently than otherwise, in cases of this class, the
court has simply decided the question before it on the theory
upon which it has been presented by counsel, without at-
tempting to determine its correctness as an abstract principle.

As applied to obstructions of water and drainage ways

by railway embankments, some courts have drawn a distinction, not generally recognized, between those which are constructed solidly, without culvert, trestle, or other opening for the escape of water, and those in which an opening is provided, but proves to be insufficient for the purpose. According to these precedents, the first condition above mentioned presents a case for original damages, and the latter a case for continuing damages. Such seems to have been the thought controlling the decision in *Haisch v. Railroad Co.,* 71 Iowa, 606, and *Stodgill v. Railroad Co.,* 53 Iowa, 341.

Applying the test suggested by the foregoing discussion, we are disposed to hold that damages arising from the occasional flooding of land by reason of an insufficient culvert upon the land of an adjacent proprietor are not original, although if the claim for damages be made and the action be tried on the theory that they are original, the parties will be bound thereby. In this conclusion we are supported by the great preponderance of the authorities. *Railroad Co. v. Anderson,* 79 Tex. 427, (15 S. W. Rep. 484, 23 Am. St. Rep. 350); *Athens v. Rucker,* 80 Ga. 291, (4 S. E. Rep. 885); *Reid v. Atlanta,* 73 Ga. 523; *Colrick v. Swinburne,* 105 N. Y. 503, (12 N. E. Rep. 427); *Wells v. Railroad Co.,* 151 Mass. 46, (23 N. E. Rep. 724, 21 Am. St. Rep. 423); *Hargreaves v. Kimberly,* 26 W. Va. 787, (57 Am. Rep. 121); *Esty v. Baker,* 48 Me. 495; *Canal Co. v. Hitchings,* 65 Me. 140; *Thayer v. Brooks,* 17 Ohio St. 489, (49 Am. Dec. 474); *Plate v. Railroad,* 37 N. Y. 473; *Railroad Co. v. Wachter,* 123 Ill. 440, (15 N. E. Rep. 279, 5 Am. St. Rep. 532); *Smith v. Railroad,* 23 W. Va. 453; *Burnett v. Nicholson,* 86 N. C. 99; *Railroad Co. v. Thillman,* 143 Ill. 127, (32 N. C. Rep. 529, 36 Am. St. Rep. 359); *Dorman v. Ames,* 12 Minn. 451 (Gil. 347); *Carriger v. Railroad Co.,* 7 Lea (Tenn.) 388; *Jungblum v. Railroad Co.,* 70 Minn. 153 (72 N. W. Rep. 971); *Railroad Co. v. Schaffer,* 124 Ill. 112, (16 N. E. Rep. 239). The case of

*Fowle v. Railroad Co.,* 107 Mass. 352, which has been quite frequently cited as sustaining the opposite theory is, upon that point, expressly disapproved by the same court in the later case of *Aldworth v. Lynn,* 153 Mass. 53, (26 N. E. Rep. 229, 10 L. R. A. 210, 25 Am. St. Rep. 608).

It must be remembered, also, in the case at bar, that the embankment complained of was lawfully made, for a lawful purpose, and wholly upon the premises of the defendant. In itself it did not constitute an invasion of the plaintiff's property or property rights, and the injuries, if any, to the adjacent land, were consequential, only arising from the negligence of the defendant in constructing it. Such being the case, it would seem an elementary proposition that to recover damages the plaintiff must show that he has in fact suffered injury therefrom, and not simply that an injury is threatened. Possibly the threatened injury might be sufficient ground to sustain a suit in equity for an injunction *(Moore v. Railroad Co.,* 75 Iowa, 263), but we find no precedent for holding it a sufficient basis for an action at law for the recovery of damages. This rule has been directly and indirectly affirmed by us on repeated occasions. *Miller v. Railroad Co.,* 63 Iowa, 680; *Sullens v. Railroad Co.,* 74 Iowa, 659; *Powers v. Council Bluffs,* 45 Iowa, 652; *Hunt v. Railroad Co.,* 86 Iowa, 22; *Drake v. Railroad Co.,* 63 Iowa, 309; *Van Orsdol v. Railroad Co.,* 56 Iowa, 470; *Pettit v. Grand Junction,* 119 Iowa, 352.

6. SAME.

The Powers case, above cited, has been much criticised as announcing the doctrine that the right of action to the landowner dates from the negligent act which results in injury to his property, and as making an improper application of the rule of permanent damages. It has also been repeatedly distinguished by us in later cases, and we have declined to extend the application of the doctrine there announced. *Pettit v. Grand Junction,* 119 Iowa, 352; *Costello v. Pomeroy,* 120 Iowa, 213; *Drake v. Railroad Co.,* 63 Iowa, 309. The first criticism above mentioned is based

upon a misapprehension of the facts there presented. The
wrongful act there charged was the negligent changing of
the course of a stream in such manner that a gradual cutting
back and widening of its channel from its point of discharge
ensued. The change was made in 1859, but the recession of
the cut did not reach plaintiff's lot until the year 1866.
More than five years after the latter date plaintiff brought
suit, and his claim was held to be barred. The right of
action was not held, as has been supposed, to have accrued
when the course of the stream was negligently changed, but
when the plaintiff's premises were actually encroached upon.
Such was our construction of the rule of Powers' Case in de-
ciding *Miller v. Railroad,* 63 Iowa, 680, although we later
fell into the error of citing it in the opposite effect in *Grand
Lodge v. Graham,* 96 Iowa, 614. We think, however, that
so far as the Powers Case goes to the time when a right
of action accrued to the property owner it is correctly in-
terpreted in the Miller Case, and is strictly in harmony
with the weight of authority. It is also an important con-
sideration that the Powers Case was against a municipal
corporation, the liability of which for injuries of this nature
is restricted within much narrower limits than is the liability
of the private citizen. *Vanderweile v. Taylor,* 65 N. Y.
341; *Cedar Falls v. Hansen,* 104 Iowa, 189. The further
question, whether the injury there under consideration
should have been held to be permanent and damages recov-
erable once for all from the moment the stream ate its way
across the boundary of plaintiff's lot, admits of more doubt,
and whether we should be inclined to apply the undoubted
rule of law there affirmed to another case involving like fact
conditions we need not now consider or decide. *Aldworth
v. Lynn,* 153 Mass. 53, (26 N. E. Rep. 229, 10 L. R. A. 210,
25 Am. St. Rep. 608); *Wells v. New Haven & Northampton
Co.,* 151 Mass. 46, (23 N. E. Rep. 724, 21 Am. St. Rep.
423); *Hargreaves v. Kimberly,* 26 W. Va. 787, (57 Am.
Rep. 121); *Doran v. Seattle,* 24 Wash. 182, (64 Pac. Rep.

230, 54 L. R. A. 532, 85 Am. St. Rep. 948); *Nashville v. Comar,* 88 Tenn. 415, (12 S. W. Rep. 1027, 7 L. R. A. 465). Whether in any case or under any circumstances one person can, by unlawful aggression upon the property of another, put the latter in position whereby his only remedy is to sue for so-called permanent damages, and by so doing license or ratify the wrong done, and thus in effect be forced under the forms of the law to sell his property or to surrender valuable rights, is a question we need not now decide. But see *Railroad Co. v. Wachter,* 123 Ill. 440, (15 N. E. Rep. 279, 5 Am. St. Rep. 532). It may also be noted in this connection that we have held that even where permanent damages are allowed it is within the discretion of the court to enjoin the nuisance. *Downing v. Oskaloosa,* 86 Iowa, 352.

III.   The question as to the measure of damages for a continuing injury to the land and its manner of application is one of those which arise under such an endless variety of

**7. OVERFLOW FROM SURFACE WATER: measure of damages.** circumstances that a rule effectuating substantial justice in one instance would often work manifest injustice in another.   As a result, we find the courts making use of various rules by which, when injury has been shown, the amount of compensation may be determined. In some cases loss or depreciation in the rental value of the property injured is said to be the true measure.   21 Am. & Eng. Ency. Law (2d Ed.) 127, note 2. To loss in rental value may sometimes be added expenses incurred on account of the nuisance. *Loughran v. Des Moines,* 72 Iowa, 382.   Under some circumstances loss of profits may be considered. *Gibson v. Fisher,* 68 Iowa, 29. Compensation for interference with the comfortable use and enjoyment of property, especially when a homestead, may be compensated in damages. *Randolf v. Town,* 77 Iowa, 52; *Churchill v. Water Co.,* 94 Iowa, 89.   And the cost of repairing or restoring the injured property has not infrequently been held to be the rule. *Lentz v. Carnegie,* 145 Pa. 612, (23 Atl. Rep. 219, 27 Am. St. Rep. 717); *Larsen v.*

*Railroad Co.,* 19 Or. 241, (23 Pac. Rep. 974) ; *Ziebarth v. Nyc,* 42 Minn. 541, (44 N. W. Rep. 1027) ; *Watson v. New Milford,* 72 Conn. 561, (45 Atl. Rep. 167, 77 Am. St. Rep. 345). In many cases not unlike the one at bar the difference between the value of the injured premises before and after each repetition of the wrong is the approved standard of compensation. *Railroad Co. v. Helsley,* 62 Tex. 593 ; *Railroad Co. v. Clifton,* 2 Willson, Civ. Cas. (Tex.), section 489 ; *Railroad Co. v. Becht* (Tex Civ. App.), 21 S. W. Rep. 971 ; 13 Cyc. 153, note £3. The foregoing is not an exhaustive statement of the various measures of damages which have been recognized, but is sufficient to indicate the tendency to make the legal remedy sufficiently flexible to provide reasonably adequate compensation to the injured party, according to the peculiar circumstances of the cases as they arise. This court has had quite frequent occasion to pass upon claims for damages for the flooding of lands on account of obstructions to the flow of streams and of surface waters. In many of them the obstruction complained of has been a railway embankment in which the facilities provided for the escape of water have been alleged to be insufficient or inadequate for the purpose. In *Drake v. Railroad Co.,* 63 Iowa, 302, the plaintiff's land was flooded for two successive seasons, and it was held that the proper measure of damage was " the difference between the value of the premises immediately before the injury happened and the value of the same immediately after."

In *Sullens v. Railroad Co.,* 74 Iowa, 666, upon a similar claim on account of successive floods, an instruction to the jury that the " measure of damages for each year is the difference between the fair market value of the land immediately before the injury each year and its fair market value immediately after such injury " was approved. The rule was again approved in *McMahon v. Dubuque,* 107 Iowa, 62, and in *Peden v. Railroad Co.,* 78 Iowa, 134. It appears, therefore, that the rule as to the measure of damages ap-

plicable to the present case is quite well settled for this state, and unless we are to abandon the rule announced in Sullens v. Railroad Co., *supra,* and other precedents of that class, we must hold that plaintiff's damages are to be found by ascertaining the depreciation, if any, in the value of her land on account of the injury of which she complains. The measure here approved is probably not in accord with the rule generally applied by other courts, but it works substantial justice and we are not disposed to change it. It is very possible that in a case where the injury is to a matured crop, the value of which can be fairly ascertained independently of the land upon which it stands, and perhaps under some other peculiar circumstances, a different rule may be properly invoked. *Railroad Co. v. Brousard,* 69 Tex. 617, (7 S. W. Rep. 374); *Green v. Railroad Co.,* 79 Tex. 604, (15 S. W. Rep. 685); *Whitbeck v. Railroad Co.,* 36 Barb. (N. Y.) 644; 13 A. & E. Ency. Law (2d Ed.) p. 709. Of course, in determining the value of the land before and after the injury, the value and condition of the crops, if any, and the extent to which they are injured or destroyed, are material matters for the consideration of the jury.

Upon the trial in the court below the plaintiff offered testimony as to the depreciation in the value of her land, but in most cases fixed the date for the comparison as that of the completion of the railway embankment, instead of the date of the flooding of the land. In one instance, however, the witness, one J. Buffnam, had his testimony directed to the date of the flood, and, while the examination was somewhat indefinite, it was sufficient, we think, to take the question to the jury. The testimony as to the value of the land at the time of the construction of the embankment, which was within a year or less before the alleged injury, was perhaps objectionable if the case was being tried as one for continuing damages; but no specific objection was made thereto as being too remote. Plaintiff was presenting her case evidently upon the theory that her damages were orig-

inal, and, if defendant wished to raise the point that they
were continuing, we think it should have made its position
clear, and, failing to do so, it cannot accomplish a successful
ambuscade under cover of a general objection that the evi-
dence is "incompetent, irrelevant, and immaterial, and not
a correct measure of recovery." In the absence of any de-
mand by defendant that the damages be assessed as original
rather than continuing, there was no error in the admission
of the testimony offered which would justify us in holding
that the case should not, in any event, have been submitted
to the jury. *Hollenbeck v. Marion,* 116 Iowa, 70.

IV. If the conclusion stated in the preceding para-
graph be unsound, and it be conceded that there was no evi-
dence affording a proper measure of actual damages, it still
8. NOMINAL        remains true that if, by reason of the defend-
DAMAGES.           ant's neglect in failing to provide a suitable
culvert, the water was backed up over plaintiff's land, she
was entitled to recover nominal damages, and to have the
case go to the jury for that purpose. *Woodman v. Tufts,*
9 N. H. 88; *Casebeer v. Mowry,* 55 Pa. 423, (93 Am. Dec.
766); *Dorman v. Ames,* 12 Minn. 451 (Gil. 347); *Jackman
v. Arlington,* 137 Mass. 277; *Hooten v. Barnard,* 137 Mass.
36; *Wells v. New Haven & Northampton Co.,* 151 Mass.
46, (23 N. E. Rep. 724, 21 Am. St. Rep. 423); Gould on
Waters (3d Ed.) section 210; *Hathorne v. Stinson,* 12 Me.
183, (28 Am. Dec. 167); *Plate v. Railroad Co.,* 37 N. Y.
472; *Dixon v. Clow,* 24 Wend. (N. Y.) 188; *Foster v. Elli-
ott,* 33 Iowa, 216; *Plumleigh* v. *Dawson,* 1 Gilman (Ill.)
522, 41 Am. Dec. 199; *Watson v. Van Meter,* 43 Iowa, 76;
*Tootle v. Clifton,* 22 Ohio St. 247, (10 Am. Rep. 732). We
do not overlook the fact that we have often held that failure
to award nominal damages, where a plaintiff is entitled to
9. SAME.          nothing more, is not a ground for reversal.
*Crawford v. Bergen,* 91 Iowa, 675; *Portman
v. Klemish,* 54 Iowa, 198; *Rowley v. Jewett,* 56 Iowa, 492;
*Phœnix Insurance Co. v. Findley,* 59 Iowa, 591; *Wise v.*

*Foster,* 62 Iowa, 114; *Norman v. Winch,* 65 Iowa, 359; *Lippert v. Lippert,* 110 Iowa, 550; *Rice v. Whitley,* 115 Iowa, 748. The thought of these cases and the reason of the rule is that this court does not sit to determine mere moot questions, or questions which involve matters of merely abstract or technical right, the decision of which determines nothing beyond the taxation of costs. This is as far as we have ever gone in the application of the rule. There are cases, however, in which the recovery of nominal damages determines and adjudicates valuable rights, and under such circumstances the refusal to allow them is reviewable upon appeal. The case before us is of that nature. The recovery of even nominal damages would operate as an adjudication of the insufficiency of the culvert, and that adjudication would be binding upon the parties in any subsequent action brought for the continuance of the nuisance. *Bennett v. Marion,* 119 Iowa, 473; Gould on Waters (3d Ed.) section 210; *Casebeer v. Mowry,* 55 Pa. 419, (93 Am. Dec. 766); *Plate v. Railroad Co.,* 37 N. Y. 472; *Mersereau v. Pearsall,* 19 N. Y. 108. Title to land is not infrequently determined by an award or denial of nominal damages for an alleged wrong. The act of the defendant in the present case in erecting the embankment in such manner as to cast the water back upon the plaintiff's land was equivalent to the assertion of an easement therein, and it might well happen that an action to recover nominal damages would be the most efficient method by which to prevent the acquisition of such easement by prescription. *Hathorne v. Stinson,* 12 Me. 183, (28 Am. Dec. 167). Says the court in the cited case: "When one encroaches upon the inheritance of another the law gives a right of action, and even if no actual damages are proved the action will be sustained and nominal damages recovered, because unless this could be done the encroachments acquiesced in might ripen into a legal right." See, also, *Bassett v. Manufacturing Co.,* 28 N. H. 438; *Canal Co. v. Torrey,* 33 Pa. 143. This court recognized and conceded the cor-

rectness of this proposition in one of the earliest cases in which the merely technical right to nominal damages was held an insufficient ground for reversal. See *Watson v. Van Meter,* 43 Iowa, 73. In that case, after announcing the rule referred to, we said: " It is true that if plaintiff is entitled to nominal damages for the purpose of establishing a permanent right, and the jury fail to assess such damages, a new trial should be granted."

So far as the question of practice in this branch of the case is concerned, the order of the trial court directing a verdict for the defendant is also erroneous, within the spirit of the decision in *Carl v. Coal Co.,* 69 Iowa, 519. In that case the plaintiff showed himself entitled to nominal damages only, but the jury returned a verdict in his favor for substantial damages. The trial court having entered judgment for defendant notwithstanding the verdict, we held it to be erroneous, saying: " The plaintiff was clearly entitled to judgment in his favor, unless the verdict was set aside for some sufficient reason. This has not been done, and when such a motion is made and comes on for hearing it would be competent to give plaintiff the option of taking a judgment for a nominal amount."

For the reasons stated, a new trial must be ordered, and the judgment appealed from is therefore reversed.