SMITH v. TEXAS & P. RY. CO.   (No. 1507.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 24, 1915. Rehearing Denied Dec. 9, 1915.)

1. APPEAL AND ERROR ⨺285—PRESENTATION OF GROUNDS OF REVIEW—MOTION FOR NEW TRIAL—FUNDAMENTAL ERROR.

Where defendant, by supplemental petition, excepted generally to plaintiff's cause of action as set forth in all his pleadings, and specially excepted to plaintiff's first supplemental petition and asked for judgment on the pleadings, which the court in effect granted by treating the exceptions as general and special demurrers and sustaining them and on plaintiff's failure to amend entering judgment dismissing the suit, the error was fundamental, reviewable without specific assignments; hence it was immaterial that plaintiff made no motion for new trial as the basis for his assignments of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1684–1690; Dec. Dig. ⨺285.]

2. PLEADING ⨺228—DEMURRERS—ADMISSIONS.

In determining, on exceptions, whether plaintiff's pleadings, taken in their entirety, show a cause of action, the court must regard as true all material facts stated.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 584–590; Dec. Dig. ⨺228.]

3. RELEASE ⨺35—INJURIES TO PROPERTY—FLOWAGE OF LAND.

Where it did not appear from plaintiff's petition to recover for damages from an overflow of his land caused by a dam built in a creek by defendant, that the damaging accumulation of water was a continuing condition and not occurring at such intervals as would make separate consideration of successive injuries the most practicable for measuring the damages, and it appeared that the dam alone was not a nuisance, and was not located on plaintiff's land, a former suit settled by a release by plaintiff, which recited that defendant had paid plaintiff $400, and that plaintiff agreed to deed a couple of acres of the land to defendant, and that the suit be dismissed, and that all complaints, claims, and causes of action not sued on were thereby released, did not bar a subsequent action for damage from overflow.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 82; Dec. Dig. ⨺35.]

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Action by W. H. Smith against the Texas & Pacific Railway Company. From a judgment sustaining exceptions to plaintiff's pleadings and dismissing the suit on plaintiff's failure to amend, he appeals. Reversed and remanded.

Cunningham & McMahon, of Bonham, for appellant. Head, Dillard, Smith, Maxey & Head, of Sherman, for appellee.

HODGES, J. In May, 1914, the appellant filed in the district court of Fannin county his original petition, alleging, in substance, the following facts: That he was the owner of about 78 acres of land situated in Fannin county, a part of which was in the Simpson survey and a part in the Wilson Gilbert survey, and that Powder creek forms its northern boundary line; that on the ——— day of February, 1913, the defendant, the Texas & Pacific Railway Company, erected a dam across Powder creek. That by reason of the erection of this dam the channel of said creek was kept filled with water, and during the months of February, March, April, and May, 1914, the water flowing down the creek would have been discharged without injury to plaintiff's land, but was caused by the dam to run across the plaintiff's farm, cutting two channels—one about 500 yards long and about 30 feet wide, and the other about 200 yards long and 30 yards wide—washing the soil from said channels and submerging about two more acres of plaintiff's land. It is further alleged that by reason of the overflows and washings set out above a crop of corn growing on the land had been destroyed. The plaintiff asked for damages in the sum of $2,800.

The appellee, defendant below, in an amended original answer, replied by general and special denials, and specially pleaded that in August of 1913 the plaintiff was in possession of and claiming ownership of the same tract of land described in his petition; that long prior to that time the defendant had erected its dam across Powder creek some distance below the land of plaintiff, and was maintaining it there as a permanent structure, at the same place, of the same height, and in the same

position in which it is now maintained; that the construction of this dam was prior to the year 1912; that on or about the 2d of April, 1913, the plaintiff instituted a suit in the justice court of precinct No. 1 of Fannin county, claiming damages in the sum of $150 on account of the overflow of his land and injury to the crops resulting from the erection of the dam; that it was the desire of the plaintiff and the defendant to settle all complaints and claims resulting from the erection and maintenance of the dam and the overflow of the land, and for that purpose the defendant paid to the plaintiff the sum of $400 and received a deed to the two acres of the land which had been damaged prior to that time. The instrument referred to is set out in full, and is as follows:

"Know all men by these presents: That, whereas W. H. Smith and his wife N. J. Smith, of the said county of Fannin, state of Texas, own a certain tract of land in the J. P. Simpson survey in Fannin county along the south side of Powder creek, extending along said creek to the west margin of the road; and, whereas, the Texas & Pacific Railway Company own a portion of said survey on which is situated a pond known as Bonham Tank Pond; and, whereas, the waters of said pond and creek have overflowed a portion of the land owned by the said Smith, said overflow being claimed to have resulted from the negligence of the Texas & Pacific Railway Company in the construction and maintenance of its dam below said land; and whereas, the said Smith did, on or about the 2d day of April, 1913, institute a suit in the justice court, precinct No. 1, Fannin county, against the said Texas & Pacific Railway Company for $150.00, damages to said land so overflowed and the crops growing thereon, said damage being alleged to have accrued during the year 1912; and whereas it is the desire of the said Smith and the said Texas & Pacific Railway Company to settle all complaints, claims and causes of action, including the cause of action sued upon, and the said parties have agreed upon a settlement, to wit, that the Texas & Pacific Railway Company pay to the said Smith the sum of four hundred and no/100 dollars ($400.00) and the said Smith deed to the said Texas & Pacific Railway Company the two acres of land hereinafter described, it being understood and agreed that the said suit will be dismissed at the costs of said Smith, and that all complaints, claims and causes of action not sued upon are hereby released and discharged in consideration of said payment: Now, therefore, in pursuance of said agreement, we, W. H. Smith and N. J. Smith, the wife of the said W. H. Smith, of the county of Fannin, state of Texas, for and in consideration of the sum of four hundred and no/100 ($400.00) cash in hand paid by the Texas & Pacific Railway Company, the receipt of which is acknowledged, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Texas & Pacific Railway Company all that certain tract and parcel of land, being a part of the J. P. Simpson survey in Fannin county, Texas, and being more particularly described as follows. [Here follows description of land not involved.]"

Other special defenses were pleaded, not necessary to notice. In reply to this the plaintiff filed his first supplemental petition, denying some of the facts alleged, but admitted the execution of the instrument quoted above, and made it an exhibit to his supplemental petition.

[1] The defendant in his supplemental answer excepted generally to the plaintiff's cause of action as set forth in all of his pleadings—both his original and supplemental petitions. It further specially excepted to the first supplemental petition because it admits the execution of the deed, and that instrument shows a release of the damages sued for. It asked for judgment upon the ground that the pleadings show no cause of action. The court treated these exceptions as general and special demurrers, sustained them, and, upon the failure of the plaintiff to amend, entered a judgment dismissing the suit. Treating this order as a judgment upon the pleadings rather than a dismissal of the suit for want of the legal sufficiency of the pleadings, the error, if any, was fundamental, and must be considered, even in the absence of any specific assignments. For that reason it is immaterial that the appellant made no motion for a new trial as the basis for the assignments set out in his brief.

[2, 3] The only question presented in this appeal is, Do the pleadings of the plaintiff, when taken in their entirety, show a right to recover any portion of the damages sought? In passing upon that question we must regard as true all of the material facts stated: That the dam across Powder creek was erected in February of 1913; that it so obstructed the flow of the waters through the creek during the months of February, March, April, and May of 1914 that they were diverted and caused to wash the land and destroy the crops referred to in the appellant's original petition. These averments, if true, show an actionable injury and a right to a judgment for damages. To defeat that right the defendant relies upon what is referred to as the "deed of release," which it pleads, and which the supplemental petition of the plaintiff admits was executed by him as alleged. The proposition urged by the appellee is that this instrument contains the terms of a settlement of all damages to the plaintiff's land which had resulted, or might thereafter result, from the erection and maintenance of the dam. The contention of the appellee is that, the dam being a permanent structure, its construction and the resulting injuries gave to the appellant but one cause of action, and that this cause of action had been adjusted in the deed relied on. As supporting that contention, the appellee refers to the case of Rosenthal v. T., B. & H. Ry. Co., 79 Tex. 325, 15 S. W. 268. That suit was one to recover damages for a depreciation in the value of a lot resulting from the construction of a railroad and the operation of trains on a street in front of the property. It was alleged that the damages resulted: First, from a faulty construction of the railroad embankment so that it obstructed the flow of water, causing it to stand in pools near the lot; and, second, from the noise, dust, and smoke caused by the operation of the trains. After quoting from a Massachusetts case, Justice Gaines, in rendering the opinion, said:

"The controlling rule in actions for injuries resulting from similar nuisances would seem to be to adopt in each case that measure of damages which is calculated to ascertain, in the most certain and satisfactory manner, the compensation to which the plaintiff is entitled. When the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any agency, the damages which have occurred only up to the time of the action will be allowed; but if the nuisance is permanent and the injury constantly and regularly recurs, then the whole damage may be recovered at once. In a case like this the resulting depreciation in the value of the property is the safest measure of compensation. Here it may be inferred from the evidence that the injury recurs upon each considerable rainfall, and continues during a stage of offensive stagnation until the water evaporates."

In Austin & N. W. Ry. Co. v. Anderson, 79 Tex. 427, 15 S. W. 484, 23 Am. St. Rep. 350, the plaintiff sought a recovery for damages resulting from the construction of a railroad bed and culverts in such a manner as to cause the water from ordinary rains to collect in large quantities and to be so diverted as to cause a washing of the soil from the adjacent land. The defendant pleaded that the suit was barred because filed more than two years after the construction of the roadbed and culverts. After discussing some authorities, the court said:

"We conclude from the authorities that where a nuisance is permanent and continuing the damages resulting from it should all be estimated in one suit; but where it is not permanent, but depends on accidents and contingencies, so that it is of a transient character, successive actions may be brought for injury as it occurs, and that an action for such injury would not be barred by the statute of limitation, unless the full period of the statute had run against the special injury before suit. The building of the embankment and the culverts, as alleged was not of itself a nuisance; it was no invasion of plaintiff's rights—they were not put on his land. They became a nuisance only at intervals by diverting water from rainfalls from its usual flow upon plaintiff's land. The embankment and the culverts were permanent, but the nuisance was not; there was no constant and continuing injury. It may be that where land is destroyed and its value before destruction is recovered as damages, there can be but one recovery. The soil and improvements might be renewed, however, in which case other suits might lie for damage to its renewed state. But suppose the land is only injured or the crops occasionally destroyed by rains, the just and rational rule, as adopted in this state, is that successive actions may be brought for the injuries as they occur. Railway Co. v. Helsley, 62 Tex. 593. We agree with the court below in its holdings upon this subject."

The same rule is announced by the Supreme Court of Iowa in Harvey v. Mason City, 129 Iowa, 465, 105 N. W. 958, 3 L. R. A. (N. S.) 973, 113 Am. St. Rep. 483, and by the Court of Civil Appeals at El Paso in So. Port. Cement Co. v. Kezer, 174 S. W. 661. In the Iowa case the court quotes as follows from Troy v. R. R. Co., 23 N. H. 83, 55 Am. Dec. 177, a New Hampshire decision:

"Whenever the nuisance is of such character that its continuance is necessarily an injury, and where it is of a permanent character that will continue without change from any cause except human labor, there the damage is an original damage, and may be at once fully compensated."

The court continues:

"This definition we still think correct, but a failure to carefully construe and apply it has led to some apparent inconsistencies in this and some other courts. It will be observed from a reading of the quoted paragraph that the term 'permanent,' so often made use of in connection with the right to recover original damages, has reference not alone to the character of the structure or the thing which produces the alleged injury, but also to the character of the injury produced by it. In other words, the structure or thing producing the injury may be as permanent and enduring as the hand of man can make it, yet if the resultant injury be temporary or intermittent, depending on future conditions which may or may not arise, the damages are continuing, and successive actions will lie for successive injuries. This thought, which is clearly implied in the quoted definition, is further elaborated in the same case (Troy v. R. R. Co., supra) as follows: 'But where the continuance of such act is not necessarily injurious, and where it is necessarily of a permanent character, but may or may not be injurious, or may not be continued, then the injury to be compensated in a suit is only the damage that has happened.' Stating the same rule in somewhat different form, it has also been said that, 'when such structure is permanent in its character and its structure and maintenance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened, and there can be as many successive recoveries as there are successive injuries.' "

The judgment of the trial court can be sustained only upon the conclusion that the facts pleaded and admitted by the appellant bring this case within the rule allowing but one cause of action. It may be conceded that the dam is a permanent structure, but it does not follow that the nuisance resulting from its construction is permanent or continuing. The dam alone is not a nuisance. It was not located upon the appellant's land, and its construction invaded no legal right of his. The nuisance arose when the waters were obstructed so as to overflow and wash the appellant's land. In order to bring this case within the rule applied in the Rosenthal Case, we must be able to say from the fact stated that this damaging accumulation of water caused by the dam was a continuing condition, and did not occur at such intervals as would make the separate consideration of successive injuries the best and most practicable method for measuring the damages. It may be that Powder creek is a very small stream which remains dry the greater part of the time, and that the obstructed flow becomes injurious only when excessive rains fall. There is nothing in the pleadings of the appellant which indicates the contrary. If that be true, then the appellant is not confined to one cause of action, but may recover in successive suits for the injuries as they occur. The principle to be applied in cases of this character is not governed by any hard and fast rule to which the courts are required to adhere, but by the end to be accomplished—that of measuring by the most

satisfactory standard the damages to which the injured party is entitled.

For the reasons stated, the judgment is reversed, and the cause remanded.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes