CITY OF OTTUMWA, IOWA, Appellant, v. VIRGINIA M. NICHOLSON, Appellee.

**Real property:** DAMAGES: RIGHT OF ACTION. Where all of the damage 1 to the property of another, growing out of the erection of a permanent structure, arose immediately upon the completion of the structure, a cause of action accrued at once in favor of the present owner of the injured property. But the wrongful and negligent construction of an improvement does not of itself give rise to a cause of action in favor of the owner of other property. His right of action accrues when his property has suffered damage thereby, and it exists in favor of the then owner.

**Same:** MEASURE OF DAMAGES: NEGLIGENCE: PROXIMATE CAUSE. The 2 measure of damage to real property growing out of the construction of an improvement, whether the injury was contemporaneous with the construction or arose later, is the difference between the reasonable market value of the property immediately before and immediately after the injury occurred. In either case the injury

complained of must be the proximate result of the wrongful act of the party charged.

Same: SEPARATE ACTIONS. The injury to real property need not be contemporaneous with the creation of the condition causing the injury; and there may be as many actions therefor as there are distinct injuries resulting from the same wrongful act.

Same: NUISANCE: RECURRING INJURIES. Where a wrongful act results in injury to the property of another and is of a permanent character, the owner may treat the injury as original and recover all damages, present and prospective, in one action; but if the wrongful act results in the creation of a nuisance he is not bound to do so. He may treat it as a continuing nuisance and sue for each subsequent accruing injury.

Same: PERMANENT NUISANCE. An abatable nuisance is not ordinarily considered as permanent. Thus a sewer of a city is not necessarily a permanent nuisance because permanently constructed; as it may be removed or remedied and the injury resulting terminated.

Appeal: ESTOPPEL: DAMAGES: EVIDENCE: WAIVER. A party cannot complain that a cause is decided upon appeal on the theory on which it was tried and submitted in the trial court; nor can he complain of errors in the instructions committed at his own request, and by requesting instructions regarding the measure of damages embodying the same theory as those given by the court, he waives objection that the evidence admitted did not tend to prove the proper measure of damages.

Same: MEASURE OF DAMAGES: EVIDENCE: PREJUDICE. Any error in the admission of evidence tending to show that the fair value of plaintiffs property before the construction of the culvert or sewer complained of greatly exceeded its value after the injury resulting therefrom, which occurred some time afterward, was not prejudicial, where there was no evidence that plaintiffs property at the time the sewer was constructed was more valuable without the sewer than it would have been at the time of the injury without the sewer, and it appeared that property in that neighborhood had appreciated during that time.

*Appeal from Wapello District Court.*—HON. FRANK W. EICHELBERGER, Judge.

THURSDAY, OCTOBER 23, 1913.

ACTION to recover of the defendant damages claimed to have been caused by the negligent construction of a sewer— *Affirmed.*

*Lloyd L. Duke,* City Solicitor, for appellant.

*Jaques & Jaques* and *W. H. McElroy,* for appellee.

GAYNOR, J.—On the 13th day of October, 1910, the plaintiff, Virginia M. Nicholson, filed in the office of the clerk of the district court of Wapello county her petition as follows: That some years ago the defendant erected a stone culvert leading from the street in front of plaintiff's house, to wit, Wapello street, onto and across plaintiff's property; that said culvert is large and was constructed for the purpose of carrying the water which had theretofore flowed in an open ditch along said street and across plaintiff's property under the sidewalk in front of plaintiff's house and over plaintiff's property; that said ditch drains a large territory, and at times of heavy rains, large volumes of water come down through said ditch and culvert and from there on to the Des Moines river; that the said culvert was provided with a stone and cement floor and has been so maintained ever since, and by reason thereof the water flowing through said culvert has, within the past two years, washed out a hole at the lower end of said culvert and washed out a ditch at said place for a long distance and caused the surface of said ditch below said culvert to be lower than the floor of said culvert and to be lower than the surface of the ditch further down the stream, thus causing water to collect in said depression and stand on or near plaintiff's property line; that said water, in the last two years, has collected and stood on or near plaintiff's property line during the entire year and has become stagnant and large amounts of refuse and filthy matter has collected therein, and said water has

been covered with a green scum and has become and is a
nuisance; that said water standing in said manner is caused
by the negligent construction of said culvert and by negligence
of said city in putting said culvert in in the manner in which
it did and in the failure to keep the ditch open from there on
to the river; that in the past two years four members of plain-
tiff's family have been stricken with typhoid fever, and plain-
tiffs allege that said stagnant water and filthy deposits stand-
ing so near to their well, which was only about fifty feet from
said pool, has contaminated their well water and is a direct
cause of said typhoid fever; that, with the nuisance as it so
exists, the plaintiff's property has been greatly depreciated
in value, and plaintiffs aver that they have been damaged in
the sum of $2,000 by reason of said nuisance.

On November 26, 1911, the defendant filed its substituted
answer as follows: That it denies each and every allegation
in plaintiffs' petition and denies each and every charge of neg-
ligence made therein against it; that, with the knowledge,
acquiescence, and consent of the owners of the property, the
culvert in question was put in, a part of same being in the
street and a part on private property; that there was no negli-
gence on its part in the construction of said culvert or in its
maintenance since; that the location of the place where said
water is alleged to have been standing is on private property;
that from the place in question to Milner street the said ditch
runs through private property; that it did not, in anything
it did in the locality in question, do anything to increase the
quantity of water flowing through said natural drainage ditch
or to change the direction thereof; that said culvert is a per-
manent structure and after it was put in has remained and
will remain there permanently; that whatever damages, if any,
to the property of the plaintiff caused thereby accrued at the
time of the putting in of said culvert and were what the law
terms original damages; that said damages, if any, accrued to
and in favor of the owner of the property at that time; that
the plaintiff did not own said property at said time, and the

defendant denies that she is the real party in interest in this case and denies that she has any cause of action against it. Wherefore the defendant demands that this case may be dismissed at the costs of the plaintiff.

Defendant, after the close of the evidence, amended its answer as follows: Comes now the defendant and for the purpose of conforming the pleadings to the proof states: That the said culvert was put in under the supervision of C. R. Allen, its city engineer, and according to plans prepared by him. That he was a thoroughly qualified and experienced civil engineer. That the alleged defect was a defect in the plan of said culvert or the alleged negligence was in the insufficiency in the size of said culvert. That there was no neglect on its part in doing said work, and it is not liable for said alleged defect in the plan of said work or in its insufficiency in the size of said culvert.

Upon the issues thus tendered, the cause was tried to a jury and a verdict rendered for the plaintiff. Upon the verdict so rendered, judgment was entered against the defendant, and from this judgment defendant appeals, assigning numerous errors alleged to have been committed by the court upon the trial of said cause. We will not take up these assignments of errors in the order in which they are presented to us but will consider them in what appears to us to be a logical sequence.

It appears from the evidence that the plaintiff was not the owner of the property alleged to have been injured at the time this culvert or sewer was constructed. Defendant, therefore, at the conclusion of all the testimony, moved that the court direct the jury to return a verdict for the defendant, based on this fact claimed, that, as the nuisance was a permanent one, then the cause of action accrued at the time the culvert was constructed and must have accrued in favor of the then owner of the lot, and, as plaintiff was not then the owner of the lot, he acquired nothing under his purchase except the real estate, and that he was therefore not the owner

of the claim for damages and was not the real party in interest.

Much confusion has arisen in the books on this question, and courts have not all occupied the same viewpoint. Courts have held where a wrong complained of is in the nature of

1. REAL PROPERTY: damages: right of action.

a nuisance, which will continue indefinitely without change from any cause but human labor, the damages are original and arise immediately upon the doing of the thing out of which the damage arose and in favor of the then owner of the property, and, a right of action having accrued, it must be brought by the then owner of the property or his assigns, within the statutory period limiting such actions. But we must distinguish between a wrongful or negligent act and the injury which flows from the wrongful or negligent act. If the structure is permanent and can only be changed by the hand of man and will continue in that condition unless so changed, and all the injury which is occasioned by the structure or the condition created is contemporaneous with the negligent or wrongful act producing the condition, then the cause of action arises contemporaneous with the construction, and the damage is original. It originated with, and is contemporaneous with, the wrongful act which produced the condition, and the damages resulting from the injury, of which the injury is the proximate cause, may be recovered once for all in one action, and the measure of the recovery will be the difference between the market value before the condition was created, which constituted the nuisance, and the reasonable market value immediately after. This is another way of saying that, where the injury out of which the damage arises is contemporaneous with and arises immediately out of the wrongful act which produced the condition, the injury being the basis for the cause of action, the cause of action arises immediately upon the resultant injury, which, being contemporaneous with the wrongful act, of course arises immediately upon the doing of the wrongful act which produced the objectionable conditions.

In other words, the wrong or negligence of the party charged gives in itself no right of action to any one. The right of action arises from the wrong or negligence to one who is injured in consequence of the wrongful or negligent act, and the cause of action does not arise until the injury occurs. The party may be ever so wrong in his conduct or negligent therein, yet no cause of action arises in favor of a third person until he is injured by the negligent or wrongful act of the other. The injury is the cause of action out of which the damage arises, and the cause of action accrues only with the injury and is contemporaneous with the injury of which the wrongful or negligent act is the proximate cause.

It is true that, at the time this sewer or culvert was constructed, the plaintiff was not the owner of the property alleged to have been injured, but it does not appear that in the original construction of this sewer any damage resulted therefrom to this land. It does not appear that it was injured immediately upon the erection of the sewer or culvert. The injury to the land occurred after plaintiff was the owner of it. The injury to the land is the basis of her cause of action, and her damages grow out of and are measured by the injury. It is true the injury is traceable back to the original wrongful or negligent act, but, until the wrongful or negligent act produced injury to the land, no cause of action arose in favor of the owner, but immediately upon the happening of the injury then the cause of action accrued, and this was after plaintiff was the owner of the land.

The measure of damage for injury to real estate, whether the suit be for what is called original damages or continuing damages, when the action is brought by the owner of the land alleged to have been injured, is the same. Of course the books show that, where the damages are original, the measure of damage is the difference between the value of the property immediately before the condition was created which

2. SAME: measure of damages: negligence: proximate cause.

caused the injury and the value immediately after. That simply means the measure of the damage is the difference between the value of the property before it was injured and the value of the property after it was injured. If the damages do not occur immediately upon the creation of the condition complained of but do occur later, traceable to the same wrongful or negligent act, the cause of action arises upon the happening of the injury, and the proper measure of damage would be, in the case of the landowner, the difference between the market value of the property immediately before the injury and the reasonable market value immediately after the injury. That is, where property has been injured by the wrongful act of another, the injury, if it is an injury, must of course lessen its value. The difference between the value of the property uninjured by the condition produced, and the value of the property as injured by the condition produced, is of course a fair measure of the loss to the party injured.

The wrong or negligence of the party charged must be the proximate cause of the injury complained of.

The wrong need not be contemporaneous with the injury in order to lay the foundation for recovery, and there may be as many successive actions, based upon the original wrong or negligence, as there are distinct and separate injuries resulting therefrom. The party having wrongfully or negligently created a condition and permitting the same to remain, the original wrong continues as a menace, and a separate action will lie for every separate and distinct injury which results from its continuance. The fact that the condition out of which the injury grows is permanent does not in itself create the cause of action. The cause of action is the injury of which the wrong is the proximate cause. If the injury and the wrong are contemporaneous, and the wrongful condition produced is permanent, and the injury and the damage are permanent, unless the condition is changed by the hand of man, then the damages

3. SAME: separate actions.

are original, and the cause of action arises at once, and the party may recover all his damages thus resulting from the permanent condition created and the permanent wrong incident thereto in one action. · But, where the injury does not arise out of the wrongful act immediately upon the doing of the wrongful act, then the cause of action arises only upon the happening of the injury and in favor of the then owner of the property injured, and the statute of limitations begins to run only from the happening of the injury.

It is hard to conceive of any condition in physical property, where the condition is created by the hand of man, that can be said to be permanent in its character.  The hand that created has the power to destroy, and again the conditions produced, which constituted the nuisance out of which the injury may proceed, may be permanent, and yet the injury may be recurring or may occur at a later date.  Then tracing back the injury to its cause, or that which produced it, the wrongful act, the cause of action arises immediately and is contemporaneous with the injury.

In the case of *Powers v. Council Bluffs*, 45 Iowa, 652, the same question arose that is now under consideration, and this court approved the following definition of permanent injury: ''Wherever the nuisance is of such a character that its continuance is necessarily an injury, and where it is of a permanent character that will continue without change from any cause but human labor, there the damage is an original damage and may be at once fully compensated.'' This definition was taken from *Troy v. Railroad Co.*, 3 Fost. (23 N. H.) 83 (55 Am. Dec. 177).

In *Harvey v. Railroad Co.*, 129 Iowa, 465, this court said:

The above definition we still think correct, but a failure to carefully construe and apply it has led to some apparent inconsistencies in this and some other courts.  It will be observed from a reading of the quoted paragraph that the term 'permanent,' so often made use of in connection with

the right to recover original damages, has reference not alone to the character of the structure or the thing which produced the alleged injury but also to the character of the injury produced by it. In other words, the structure or thing producing the injury may be as permanent and as enduring as the hand of man can make it; yet if the resulting injury be temporary or intermittent, depending upon future conditions which may or may not arise, the damages are continuing, and successive actions will lie for successive injuries. This thought, which is clearly implied in the quoted definition, is further elaborated in the case (*Troy v. Railroad Co., supra*) as follows: 'Where, the continuance of such act is not necessarily injurious, and where it is necessarily of a permanent character but may or may not be injurious or may or may not be continued, then the injury to be compensated in a suit is only the damage that has happened.'

The court proceeds further in *Harvey v. Railroad Co.* and says:

Stating the same rule in somewhat different form, it has also been said that 'when such structure is permanent in its character and its structure and maintenance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened, and there can be as many successive recoveries as there are successive injuries.'

Citing *Railroad Co. v. Biggs*, 52 Ark. 240 (12 S. W. 331, 6 L. R. A. 804, 20 Am. St. Rep. 174).

In a note found in 20 Am. St. Rep. 176 (*Railroad Co. v. Biggs*), we find the following: "When the original act creating a nuisance to land is permanent in its nature and is at once productive of all the damage which can ever result from it and at once destroys the estate for all practical purposes, so that when the act is completed all the damage that can be effected thereby is consummated, the entire damages must be recovered in one action, and the statute of limitations begins to run against the cause of action from the time of the com-

plete erection of the nuisance.'' The proposition set out in this note is to the effect that where the act that created the nuisance (that is, the wrongful act) and the injury are contemporaneous in point of time, the one arising immediately from the other, the cause of action arises not from the structure, though permanent, but from the injury which is contemporaneous with the structure. Of course the injury is traceable to the wrongful act which produced the condition out of which the injury arose, but the cause of action arises from the injury, and they both being contemporaneous, the wrong and the injury, it may well be said that the cause of action arises immediately upon the completion of the wrongful act which produced the condition out of which the injury arose, but the real fact is that the cause of action arose at the time the injury was sustained:·

The injury of which plaintiff complains in this case was not contemporaneous with and did not arise immediately out of the wrongful act of which complaint is made. Her cause of action arose when the wrongful act produced injury to her land and not before.

In support of the foregoing, see Harvey v. Railway Co., 129 Iowa, 465, in which the question now under consideration is fully discussed, and the cases therein cited in support of the proposition.

As supporting the proposition that, where the injury is not contemporaneous with the wrongful act which produced the condition to which the injury is traceable, the measure of damage is the difference between the fair market value of the land immediately before the injury and the fair market value immediately after the injury, see Sullens v. Railway Co., 74 Iowa, 666; Pedens v. Railway Co., 78 Iowa, 134; McMahon v. Dubuque, 107 Iowa, 62.

It must be borne in mind that the rule to which we have adverted is adopted in cases where the owner of the land is seeking to recover damages for injury to the land itself, and it is upon this theory that the wrong complained of in the

instant case was submitted to the jury. Upon this theory it
was tried by both parties and upon this theory submitted by
the court to the jury, and it is upon this theory that we are
now considering the case. The last rule relates and has refer-
ence to an injury to the freehold itself, as distinguished from
an interference with the comfortable use and enjoyment of
the property.

From the foregoing we deduce the rule that if the con-
dition wrongfully created is of a lasting character and per-.
manent, and damage results therefrom (that is, the value of
the plaintiff's land is affected thereby),
4. SAME: nui-       though all the damage has not yet made itself
sance: recur-
ring injuries.       manifest, the landowner may elect to treat it
as original injury and recover damages, not only for the
injury then caused in the depreciation of the value of his
land, but for all injury that appears reasonably certain to
result in the future as a proximate result of the erection and
continuance of the nuisance, and where he elects so to treat
the wrong, and a judgment is obtained in an action tried
upon that basis, such judgment will be a bar to any further
claim on his part for any further damages that may arise by
reason of the continuance of the nuisance, but he is not
required to so elect, for it is not always possible to anticipate
and know what damages may result from the erection and
continuance of the nuisance. For, if the thing be a nuisance,
the person creating it has the legal right and is under legal
obligation to remove, change, or repair the thing and thereby
terminate the injury; and, if he fails to do so and permits
the nuisance to continue, each day's continuance of the nui-
sance is a repetition of the original wrong and, where injury
results therefrom, the cause of action arises immediately upon
the happening of the injury.

The mere fact that the sewers in a city are permanent in
their construction does not render the nuisance occasioned by

them permanent also, for the reason that the person creating
it has the legal right and is under legal obli-
gation to remove, change, or repair it and
thereby terminate the injury resulting therefrom.   An abata-
ble nuisance is not ordinarily considered a permanent nui-
sance.   See *McGill v. Pintsch,* 140 Iowa, 429; *Vogt v. Grin-
nell,* 123 Iowa, 333; *Hollenbeck v. City of Marion,* 116 Iowa,
69; *Bennett v. City of Marion,* 119 Iowa, 473.

Ordinarily, in such cases, the measure of damage is the
difference in the value of the use of the property as it existed
prior and subsequent to the nuisance, but here the parties
elected to treat the injury complained of as a
permanent injury to the land itself, and the
evidence was introduced upon that theory, and
the instructions asked by the defendant and the instructions
given by the court were upon that theory; and no complaint
can now be made that it is disposed of in this court upon the
theory upon which it was tried in the court below, and par-
ties cannot be heard to complain in this court of errors com-
mitted by the trial court, which errors, if any, were com-
mitted by the court at the request and upon the suggestion
of the parties.

Though from the foregoing discussion it may be apparent
that the wrong rule was adopted for the measurement of dam-
ages, yet the defendant cannot be heard to complain.   The
defendant asked the court to give to the jury the following
instructions:

In case that you find that the plaintiff has suffered dam-
ages in this case on account of the negligence of the defendant,
and that the defendant is liable to respond to her for damages
therefor, then in estimating said damages you are instructed
that you are not to allow the plaintiff any damages on account
of the sickness of herself or any members of her family from
typhoid fever or from any offensive smells or annoyance of
any kind from the pool of water along the north side of her lot,
except in so far as it bears on the question in the depreciation

in the value of her property after the construction of said culvert from its value before the construction of said culvert.

If you find that the plaintiff is entitled to damages against the defendant in this case, then you are instructed that the measure of damages is the difference in value between the value of the property of the plaintiff just before the culvert in question was put in by the defendant and its value immediately after the culvert was put in. But, in arriving at the value of the property after the culvert was put in, you can take into consideration all the damages to the plaintiff's property in question, past and prospective.

If you find that the plaintiff is entitled to a recovery in this case against the defendant, then in estimating the damages you are instructed that any damages the plaintiff has suffered on account of the sickness of herself or family with typhoid fever, and on account of the discomforts and annoyance caused by the pool of water along the north side of her property and its condition, are not involved in this case further than as they bear on the value of her property after the culvert in question was put in, and you will not allow her anything therefor, except as you do so in arriving at the value of her property after the culvert in question was put in.

The court in its sixteenth instruction embodied all that was requested by the defendant in the instructions hereinbefore set out and practically as requested, and the defendant cannot now complain that the court in its instructions gave to the jury the wrong measure of damages, even if the measure submitted by the court was in fact wrong. The court having given the identical rule for the admeasurement of damages requested by the defendant, the defendant cannot now complain. See *Anderson v. Anderson*, 150 Iowa, 665; *Bryce v. Railroad Co.*, 128 Iowa, 483; *Barron v. Collenbaugh*, 114 Iowa, 71; *Bonnot v. Newman*, 109 Iowa, 580; *Light v. Railway Co.*, 93 Iowa, 83; *Campbell v. Ormsby*, 65 Iowa, 518.

It is next contended that the court erred in the admission of evidence in that it adopted the wrong rule for the admeasurement of damages. A sample of the questions to which objections were urged by the defendant on the ground that they were improper for the admeasurement of damages

and were immaterial, irrelevant, and incompetent is: "Q. The condition of affairs before they put in the culvert there, without any stagnant water, without any smell, and without any pollution of your drinking water. Are you able to give us what the fair market value of that property was before they put in the culvert?" To which the witness answered, over the foregoing objection: "It was worth $1,000 or $1,200. Q. Right after this nuisance occurred, the stench commenced and the stagnant water commenced to stand there, and your drinking water was polluted. What was the fair market value of the property then?" To which the same objection was urged, and the witness answered, "Not over $450." Other questions of like import were asked on the question of damages, like objections interposed, and the witness permitted to answer.

These questions are in harmony with the rule adopted by the defendant in his request for instructions to the jury; and, though objected to at the time, we think that the defendant waived his objection in having the court instruct the jury on his own request that this was the proper measure of damages.

But, if that were not so, we think it was error without prejudice and so recognized by the defendant in asking instructions, for there is no evidence that the property without this nuisance was more valuable at the 7. SAME: measure of damages: evidence: prejudice. time the sewer was put in than it would have been at the time of the injury without the sewer. In fact, the evidence discloses that there was a decided rise in value generally of property in that neighborhood, unaffected by the sewer, after the sewer was put in. If, therefore, the question did not present exactly in form the proper rule for admeasuring damages, yet it cannot be said that it was prejudicial to the defendant for the reason that, the greater the value of the property before the injury, the greater the difference would be between its value then and its value after the nuisance was created, as estimated by the wit-

.nesses. Parties to a suit ought to be consistent in their positions and ought not to be permitted to play fast and loose with the court. The defendant, having made his objections, might have rested thereon and predicated error, if any, upon the action of the court; but when the party accepts the theory of the court as to the admeasurement of damages and requests the court to instruct the jury upon that very theory, and the court does instruct upon that theory, he must be held to have abandoned his first theory and accepted the theory of the court as the correct theory upon which the case should be finally disposed of.

There are other errors assigned, but we do not deem them of sufficient importance to justify consideration under the record made, excepting in so far as they are disposed of by what has been heretofore said.

Upon the whole record, we find no reversible error, and the cause is *Affirmed*.

WEAVER, C. J., and DEEMER and WITHROW, JJ., concur.