W. R. THOMPSON, Appellee, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

**TRIAL:** Reception of Evidence—Excluding Evidence on Nonsupported Charge—Effect.  A party may not complain that he was refused permission to introduce evidence to disprove a charge of negligence *of which there was no evidence.*  So held where plaintiff alleged the negligent construction of a bridge, but introduced no evidence thereon, and defendant was refused the opportunity to show that the bridge was constructed in the customary way.

**TRIAL:** Reception of Evidence—Exclusion of Cumulative Evidence
2 —Effect. Exclusion of cumulative evidence on undisputed fact is not error.

**NEGLIGENCE:** Evidence—Custom as Bearing on Absolute Duty—
3 Waters and Watercourses. Custom will not excuse the nonperformance of an absolute duty. So held where a railway, charged with the absolute duty to maintain sufficient openings under its bridges for the passage of water, sought to show that the construction of the bents of the bridge was in accordance with custom.

**WATERS AND WATERCOURSES:** Obstructions—Flooding Lands
4 —Measure of Damages. "The difference between the value of a farm *as an entirety,* immediately before and immediately after an unlawful flooding" caused by negligently obstructing drainage, is a better measure of damages than such difference confined solely to the lands receiving the physical injury. So held where the hill and bottom land of a 138-acre farm could not well be segregated for general farm purposes.

**WATERS AND WATERCOURSES:** Obstructions — Unprecedented
5 Storms—Instructions. Instructions as to defendant's nonliability for damages caused by unprecedented storms, and as to the proof entitling plaintiff to recover for obstructing drainage, reviewed and held correct.

**NEGLIGENCE—**Act of God—Intermingling Negligence of Man.
6 When negligence concurs with an act of God in producing an injury, the party guilty of the negligent act is responsible, provided the injury would not have happened but for such negligent act.

**EVIDENCE:** Opinion Evidence—All-explanatory Facts. If the facts
7 recited by a witness are all-explanatory, complaint may not be made that the court declined to permit an opinion or conclusion to be added thereto.

PRINCIPLE APPLIED: A witness testified that he had never seen a storm in this country as severe and violent as the one in question, and that he had never before seen so much water fall at one time. He was then asked if the flood was unusual, unprecedented and extraordinary. Question excluded. *Held,* not error.

**APPEAL AND ERROR:** Assignment of Error—Brief Points—In-
8 definiteness. An assignment of errors on the admissibility of evidence will be wholly disregarded, which points out no rulings except to give the page or pages of the abstract, without reference to the lines thereof, where numerous rulings may be found *en masse,* followed by no brief points or propositions on which counsel relies,

and with no argument except to merely state the ruling or to refer to certain pages of abstract for the ground of complaint.

*Appeal from Harrison District Court.*—THOMAS ARTHUR, Judge.

THURSDAY, JUNE 29, 1916.

ACTION for damages consequent on the overflow of plaintiff's land, alleged to have been caused by insufficient openings for the passage of water under defendant's railway bridges, resulted in judgment against defendant, from which it appeals.—*Affirmed.*

*Cochran & Barrett* and *Helsell & Helsell*, for appellant.

*Roadifer & Roadifer*, for appellee.

LADD, J.—I.   The plaintiff's farm, consisting of 138 acres, lies east of the Latta drainage ditch, excavated to carry off the waters of the Boyer River by a more direct course than it afforded.   The railway of defendant extended through the farm in a northerly and southerly direction, leaving about 50 acres west of the right of way and the remainder east of it. This 50-acre tract is bottom land, as are 18 acres of that east of the track.   The remaining 70 acres are what is known as hill land.   Only 38 acres west of the right of way were in cultivation, and prior to May 13, 1913, this had been prepared to be planted with corn.   The 18-acre tract of land east of the track, also in cultivation, was level, while that to the west sloped to the southwest.   About a half mile north of the land, defendant maintained a pile bridge over Harmony Creek, which flows into the drainage ditch, and about a half mile south of said land is another pile bridge over Harris Grove Creek.   Each of these bridges have several bents of several piles each, and the bents are at right angles with the railway, but not parallel with the streams.   The bottom land of plaintiff's farm was overflowed by water from rainfalls of May 13th

and 14th of 1913. The petition alleged that defendant failed and neglected to provide sufficient openings beneath the bridges for the flow of water, and that it negligently placed the piling bents diagonally across the bed of the stream, in consequence of which, trees, brush and debris were gathered at the bridges and the water thrown back thereby, so that plaintiff's land was flooded, to his great injury. These allegations were put in issue by the answer, and on the trial the evidence was such, notwithstanding appellant's contention to the contrary, as to carry the several issues to the jury.

II. Several engineers, after qualifying as experts, were asked, in substance, whether it was the usual and customary method of bridge builders to place the bents or piling at right angles with the track. This was objected to as incompetent, irrelevant and immaterial, calling for a conclusion and not tending to establish any defense in the case, and the objection was sustained. The ruling may be sustained on several grounds: (a) Though plaintiff had alleged the negligent construction of the bridge, in that bents or pilings were placed diagonally with the course of the streams, no evidence had been adduced by plaintiff tending to show that the company was wanting in skill or care in so doing. That issue then was out of the case. (b) A witness testified without objection that the bridge was constructed according to the method uniformly followed, and this was undisputed; so that, in any event, excluding merely cumulative evidence of an established and undisputed fact could not well have worked any prejudice. (c) Whatever may have been the usage or custom in the manner of constructing such bridges, this would not excuse defendant from its duty of leaving sufficient openings under the bridges for the free passage of water. *Van Orsdol v. B. C. R. & N. R. Co.*, 56 Iowa 470; *Stodghill v. C. B. & Q.*

1. TRIAL: reception of evidence: excluding evidence on nonsupported charge: effect.

2. TRIAL: reception of evidence: exclusion of cumulative evidence: effect.

3. NEGLIGENCE: evidence: custom as bearing on absolute duty: waters and watercourses.

*R. Co.*, 43 Iowa 26; *Houghtaling v. Chicago, G. W. R. Co.*, 117 Iowa 540. A railway company is bound to provide openings beneath its bridges reasonably sufficient for the passage of the water of streams crossing its right of way and to keep them sufficiently unobstructed by drift or mud or both to allow such passage, and it is liable for all damages resulting to the owners of adjoining lands in consequence of its omission so to do. *Cornish v. C. B. & Q. R. Co.*, 49 Iowa 378; *Drake v. Chicago, R. I. & P. R. Co.*, 63 Iowa 302; *De Lashmutt v. Chicago, B. & Q. R. Co.*, 148 Iowa 556; *Van Orsdol v. R. Co.*, supra. Because of this absolute duty, whether the construction is usual or customary is not material in ascertaining whether a sufficient passageway of water has been provided for; and on this ground, the evidence tendered was rightly excluded.

III. The twelfth instruction advised the jury that the measure of damages would be the difference between the fair market value of the farm before the alleged overflow of water and such value immediately thereafter. Exception is taken to this for that, as is contended, the court should have limited the jury to the difference in value of the land actually injured; i. e., the bottom land of the farm. Though part of the farm is hill land, this was made use of in connection with the bottom land—all as one farm. The evidence tended to show that, after the storm of May 14th, water stood on plaintiff's land east of the track 4 or 5 feet deep, and west of it, 3 feet deep, and continued on about half the 38 acres for nearly 30 days; that logs, wood, brush, wire fences and debris and trash were scattered over the land, so that it took plaintiff and his employee a week to clear most of this off, a part still remaining, and he was not able to put in a crop until the lapse of 30 days, when the ground was sticky and gummy and not in condition to work, and continued hard and unyielding during the season. Mani-

4. WATERS AND WATERCOURSES: obstructions: flooding lands: measure of damages.

festly, the injury, at least in part, was to the soil, and the measure of damages was the difference in its market value before and after the overflow. *Drake v. Chicago, R. I. & P. R. Co.*, 63 Iowa 302; *Sullens v. Chicago, R. I. & P. R. Co.*, 74 Iowa 659; *Peden v. Chicago, R. I. & P. R. Co.*, 78 Iowa 131; *McMahon v. City of Dubuque*, 107 Iowa 62; *Harvey v. Mason City & Ft. D. R. Co.*, 129 Iowa 465.

The only issue raised by the exception to the instruction is whether such values be of merely the portion overflowed, or the entire farm. Though some witnesses estimated the value of that overflowed alone, it is apparent from the description of the farm that this could not well be segregated from the remainder of the farm; for a part was on each side of the right of way, both off the highway and without building spot, and the testimony that the hill and bottom land would go better together was undisputed. Under these circumstances, we see no objection to considering the farm as a whole, even though portions only had been injured. That land not interfered with is included cannot, theoretically at least, change the measure of damages; for the difference in values before and after is due to that only which has been injured, and therefore the difference between the values of the farm in its entirety should be the same as that between the injured portions considered separately. If considering the farm in its entirety furnishes. cover for exaggeration, cross-examination is the weapon to uncover it. We are not saying that the difference between the market values of the particular injured portions before and after the overflow may not furnish an accurate measure of damages, but that, even if so, it does not follow that such difference in values of the entire farm containing these would be inaccurate. Indeed, the latter seems the better rule where, as here, the injured portions are separated by a railway, not on a highway, depending somewhat on their connection with the high land for their value and economic use, and with it operated. The aim always in laying

down a rule for the measure of damages is to assure just and adequate compensation for the injury complained of, and such is the result of that given in the instruction criticized. It is approved.

IV.  In the sixth instruction, the jury was told:

"The railroad company is required · to anticipate and make provisions for such floods as usually occur in the ordinary course of nature and to foresee and provide for such unusual floods as may occasionally occur, even though such floods be extraordinary in their character.  It is not, however, required to make provision for such floods as are unprecedented and which could not have been reasonably foreseen in the exercise of ordinary care."

5. WATERS AND WATERCOURSES: obstructions: unprecedented storms: instructions.

A witness had testified to a similar storm 26 years previous, and it seems to be thought by appellant that this ought not to have been counted in ascertaining whether the storm in question was unprecedented.

How far back the past must be searched in ascertaining whether there is a precedent and with what care is not touched in the instruction.  Even if there were a precedent so remote that defendant was not required to take it into account, this instruction was right, in so far as it went, in providing against the unprecedented.  Instructions 7, 8 and 9, when considered together, as they should be, correctly state the law.  The tenth instruction exacts that it must have been found that the injuries complained of were caused by the overflow of waters substantially as alleged, and the eleventh instruction defines precisely and accurately what must be found to warrant recovery by plaintiff:  (a) The insufficiency of one or both openings beneath the bridges;  (b) that this insufficiency of openings under one or both bridges caused the waters of one or both creeks to overflow at the times and place in question; and  (c) that the injuries complained of were caused by such overflow, unless they were occasioned by the act of God.  The several instructions, when considered

together, clearly and accurately lay down the rules of law applicable to the case. The seventeenth and eighteenth instructions, in reference to defendant's negligence if found concurring with an act of God, were in harmony with *Vyse v. Chicago, B. & Q. R. Co.*, 126 Iowa 90. The instructions requested, in so far as correct, were included in those given, and the latter amply and correctly stated the law as applied to the facts. The third special interrogatory requested did not call for an ultimate fact, and was rightly refused. The first interrogatory given included the first of those requested. Other exceptions are hypercritical, and exact no discussion for the vindication of the rulings complained of.

*6. NEGLIGENCE: act of God: intermingling negligence of man.*

V.   Objections to questions propounded to Peterson and Mundt were rightly sustained, as not proper cross-examination. Goodwin testified that he had never seen a storm in this country as severe and violent, and that he did not believe he ever saw so much water fall at one time in his life as did then. The latter was then asked whether it was an extraordinary and unprecedented flood, and the former, whether it was an unprecedented, unusual and extraordinary storm and flood. The objection was that the question was incompetent, as calling for an opinion on the issue to be determined by the jury. Manifestly, the witnesses had testified to facts which, if true, indicated that the flood and storm were unprecedented, and it was not error to refuse to allow them to state the same facts in different language.

*7. EVIDENCE: opinion evidence: all-explanatory facts.*

Other rulings on the admissibility of evidence cannot be reviewed. The assignments of error are without reference to rulings, save to the pages on which are to be found, *en masse*, objections sustained or overruled. No propositions or points on which appellant relies are stated nor are citations made thereunder, and the argument merely states the rulings or

*8. APPEAL AND ERROR: assignment of error: brief points: indefiniteness.*

refers to certain pages of abstract for grounds of complaint. We must decline to search through pages of the abstract for the particular ruling, among several, to which exception is taken, or to look there for the argument in support of objections. The lines of the abstract are numbered for the purpose, among other things, of directing attention of the court to the precise ruling complained of, and, if it is entitled to any consideration, it is not too much to exact that it be clearly stated in the assignment of error, and, where found and definitely pointed out, that the proposition or point relied on as showing it to be erroneous or correct be clearly expressed under numbers corresponding with that of the assignment, and that this numbering be followed in argument or elaboration. No purpose is served in the assignment of an error, unless it is followed by proposition or brief point as above indicated, and thereafter, argument is optional. After requiring that the errors relied on for reversal be stated, Rule 53 of this court proceeds:

"Following this [assignment of errors], the brief shall contain, under a separate heading of each error relied on, separately numbered propositions or points, stated concisely, and without argument or elaboration, together with the authorities relied on in support of them. . . . No alleged error or point, not contained in this statement of points, shall be raised afterwards, either by reply brief or in oral or printed argument, or on petition for rehearing."

Rule 55: "The argument shall be confined to a discussion and elaboration of the points contained in the briefs."

As said, there are none of the "separately numbered propositions or points" in the brief, and these are only to be ascertained from a comparison of the assignments of error and the argument under Rule 55. Compliance with these rules in the preparation of briefs is a great aid to the court, and insures a clear understanding of the precise questions raised and sought to have reviewed.

We discover no error in the record, and the judgment is—*Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur. .