W. R. THOMPSON, Appellee, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

**JUDGMENT: Mistakenly Treating Damages as Original and Permanent—Effect.** One who elects to treat the construction of a grade and the driving of piling in a watercourse as causing original and permanent damages, even though they were not such, in fact, and sues and recovers on that theory the difference in value of his land immediately before and after the injury, may not thereafter maintain an action to recover damages which were not ascertained or even anticipated when the first suit was begun.

**JUDGMENT: Identity of Issue.** An allegation in one action that a diversion of water was caused (1) by the improper building of a grade, (2) by the improper driving of piling, and (3) by the improper laying of the track, presents the identical issue presented in a former action in which only the first two means were alleged.

*Appeal from Harrison District Court.*—A. B. THORNELL, Judge.

OCTOBER 2, 1920.

REHEARING DENIED MARCH 11, 1921.

PLAINTIFF has verdict and judgment for alleged damage to his crops and alleged depreciation of the value of his land caused by overflow waters, charged to be due to negligent conduct on part of defendant.   Defendant appeals.—*Reversed.*

*Helsell & Helsell, Cochran & Wolfe,* and *Tinley, Mitchell, Pryor & Ross,* for appellant.

*Roadifer & Roadifer* and *H. L. Robertson,* for appellee.

SALINGER, J.—I. In a suit brought and decided before the institution of the suit we now have before us, this plaintiff charged that defendant had injured him by wrongfully caus-

**1. JUDGMENT: mistakenly treating damages as original and permanent: effect.** ing the same land involved in this suit to be flooded. There are differences in the suits, to which attention will be called later. But they are identical so far as the alleged *cause* of plaintiff's damage is concerned. In both suits, the plaintiff charges that, by the building of grades and by the manner in which pilings were placed by defendant into running streams, passage of water down those streams was obstructed and interfered with, and that the ultimate consequence was a diversion of water, brought about by the fact that these obstructions caused insufficient waterways, and therefore the water backed up and overflowed some 56 acres of the 138-acre farm belonging to the plaintiff. It is the contention of the appellant that having brought this first suit and having recovered therein stands in the way of the right to maintain the present suit. In apt ways it was urged in the trial court that the bringing of the first suit and obtaining and accepting the recovery therein, works an election of the plaintiff to treat the injury now complained of as an original and permanent injury, and that, therefore, he is now estopped from asserting that he has not received full compensation for all injuries that existed when recovery was had in the first suit, and as well for damages that were then prospective, including injuries now complained of. It complains because this contention was overruled.

As we understand it, it is the claim of the appellee that the two suits are not identical, because the first suit, unlike the second one, claimed no damages because of improper construction of the defendant's *track;* that no crops planted or growing were involved in the first suit; and that suit was directed to the value of the land before and after the overflow involved in the first suit, but not to the value of the land as affected by the track

construction.  To put it in the words of the argument for ap-
pellee:

"While the diminution of the value of the farm was the
measure of damages in the former case, still it is confined to
diminution caused by one particular diversion of water from
Harris Grove Creek and Harmony Creek, and not to diminution
by reason of the construction of the track in the manner it was
constructed."

To begin with, we think the premise is faulty.  We hold
that the improper construction of the track *was* urged in the
first suit.  In that suit, the petition declared that the track of
the defendant passes through a part of plaintiff's land, diag-
onally from northeast to southwest.  There is no claim in either
petition that what is, in strictness, the track,—that is to say, the
rails and the ties,—were improperly laid; and the word "track,"
as used in both suits, refers to the bed or grade upon which the
ties and the rails were placed.  Keep this in mind, and it be-
comes significant that both petitions alleged that the grade of
the track runs a considerable distance both north and south
of plaintiff's land, and is a solid grade; that it is considerably
higher than the adjacent lands, and is without opening, with the
exception of one opening at about the center of plaintiff's land,
where the railroad crosses the same, at which point there is an
opening in the track, made for the sole purpose of caring for
the surface water running from the land of plaintiff and from
other land to the east.  We find the petition in the first suit
charges that, in constructing its "track," defendant negligently
failed to provide a sufficient opening at the place where it crosses
to admit the water of Harmony Creek to pass over the right of
way and under the track, and that defendant negligently failed
and neglected to provide sufficient opening in its track at the
place where it crosses Harris Grove Creek to care for the water
of that creek.

But we are not prepared to hold that, even if the construc-
tion of the track was not mentioned in the first suit, that this
alone would prevent that suit from operating either as an ad-
judication or an estoppel against the litigation
of certain questions.  If it be the basis of both
suits that building a grade as was done, and

2. JUDGMENT:
   identity of is-
   sue.

obstructing the passageway of water down the creek by the manner in which bridge pilings were placed therein, resulted in driving water upon the land of plaintiff, the naked fact that a third means for producing these results was for the first time urged in the second suit will not make the first suit less effective as an estoppel than if all three means that caused the injury had been named in both suits. If both suits rest on a wrongful diversion, produced by two specified agencies, then adding that a third agent co-operated in this result would not create a lack of identity of issue. If, in a first suit, the charge was that plaintiff, at a stated time and place, had knocked out the teeth of the defendant by striking the same with a sledge hammer, and damages were recovered for that assault, it would be settled against a second suit that this assault had been compensated for, even though the second suit charged that plaintiff used a sledge hammer and his fists in knocking out the teeth.

### 1-a

If the damage caused was, in fact, a permanent and original damage, then suing therefor and recovering bars future suit for later injury, even if such future injury was neither ascertained or anticipated when the first suit was brought. That is elementary. If one sues for all due or to become due before he knows all that may become due, he none the less must take his recovery as full pay for all damage, present, past, and future.

In *Peden v. Chicago, R. I. & P. R. Co.*, 73 Iowa 328, there was a covenant running with the land that the water on the southeast side of the lot was to be made to run on the same side of the lot, instead of through cattle guards. The defendant railroad constructed a culvert through an embankment, and cast the water on the land of plaintiff on the other side of the lot. We held, in an action for damages for flooding land and to crops, that, if the jury found the culvert was a permanent structure, the damages were original, and that the right of recovery arose at once for all the damages which might occur to the premises by reason of the structure. The distinguishing point in *Fowle v. New Haven & N. Co.*, 112 Mass. 334, seems to be that a case such as the one at bar here is not to be treated strictly as is an action for an abatable nuisance. It is said that:

"More accurately, it is an action against the defendant for a construction of a public work under its charter in such a manner as to cause unnecessary damage by want of reasonable care and skill in its construction."

It is further said that:

"For such an injury, the remedy is at common law. And if it results from a cause which is either permanent in its character, or which is treated as permanent by the parties, it is proper that entire damages should be assessed with reference to past and probable future injury."

It is held that it is this that takes the case out of the rule in nuisance cases where continuance is held to be not merely a new damage, but a new injury. The following definition, taken by *Powers v. City of Council Bluffs*, 45 Iowa 652, from *Town of Troy v. Cheshire R. Co.*, 23 N. H. 83, was approved in *Harvey v. Mason City & F. D. R. Co.*, 129 Iowa 465:

"Whenever the nuisance is of such character that its continuance is necessarily an injury, and where it is of a permanent character that will continue without change from any cause except human labor, there the damage is an original damage, and may be at once fully compensated."

And it is said in *City of Ottumwa v. Nicholson*, 161 Iowa 473, that, if the injury and the wrong are contemporaneous, and the wrongful condition produced is permanent, and the injury and the damage are permanent unless the condition is changed by the hand of man, then the damages are original, and the cause of action arises at once, and the party may recover his damages thus resulting from the permanent condition created and the permanent wrong incident thereto, in one action.

In *Stodghill v. Chicago, B. & Q. R. Co.*, 53 Iowa 341, there is approved the following statement in *Town of Troy v. Cheshire R. Co.*, 23 N. H. 83:

"The railroad is, in its nature, design, and use, a permanent structure, which cannot be assumed to be liable to change; the appropriation of the roadway and materials to the use of the railroad is, therefore, a permanent diversion of that property to that new use, and a permanent dispossession of the town of it as the place on which to maintain a highway. The injury done to the town is, then, a permanent injury, at once done by

the construction of the railroad, which is dependent upon no contingency of which the law can take notice, and for the injury thus done to them they are entitled to recover at once their reasonable damages.''

It was further said:

''In this case, the damages to the whole extent were at once apparent. The water was diverted from the natural channel as soon as the embankment was raised to a sufficient height to turn the current into the new channel. The injury to the land was then as susceptible of estimation as it ever afterwards could be, and without calculating any future contingencies.''

In *Finley v. Hershey,* 41 Iowa 389, permanent and original damages were said to follow of necessity the filling up of a slough or arm of the Mississippi River, upon which a slaughterhouse owned by the plaintiffs was situated. The same has been said where a permanent building cut off access to a right of way. And suit to enjoin the erection and for damages was held to bar a successive action attempted for subsequent acts also interfering with said access. *Hodge v. Shaw,* 85 Iowa 137. In the *Harvey* case, 129 Iowa 465, 475, this was said to be a good illustration of damages that were original, and all to be recovered in one action:

''The construction of a milldam against the course of a stream. So far as the dam operates to permanently overflow the land of another and take away from the owner all beneficial use of his property * * *.''

In *Stodghill v. Chicago, B. & Q. R. Co.,* 53 Iowa 341, 343, the court said, as to what is a case of original and permanent damage:

''When the earth was deposited in the channel of the creek, and raised to a sufficient height to cover over the bridge and make a solid embankment upon which to lay the railroad track, the water in the creek was at once turned into the new channel.''

In *Fowle v. New Haven & N. Co.,* 112 Mass. 334, 337, successive suits were not permitted, where the injury was caused by the erection of a permanent embankment along the margin of a river, and, as a result, the current of that stream was, at times, thrown upon the land of the plaintiff. We said, in *Harvey v. Mason City & F. D. R. Co.,* 129 Iowa 465, that it

has quite frequently been held that damages to real property of permanent character, and especially where the wrong complained of is in the nature of a nuisance which will continue indefinitely without change from any cause but human labor, are recoverable once for all, and that ordinarily the measure of such recovery is the decrease in the fair market value of the property on account of such injury, and that in such case the damages are said to be original.

Ordinarily, we take no note of dissenting opinions, nor of cases where a substitute opinion is written after granting a rehearing. But the litigation between these parties seems to demand an exception to this rule. In an opinion (*Thompson v. Illinois Cent. R. Co.*) reported in 153 N. W. 174, there was a reversal because the trial court had adopted for the measure of damages the difference in value by the acre of the entire Thompson farm before and after the flood. This opinion was concurred in by Justices Gaynor, Preston, and Salinger. A dissent was filed by Mr. Justice Deemer, in which Justices Weaver and Ladd concurred. The dissent took the position that, since the flood deposited mud and silt on part of the land, this affected the value of the farm in its entirety, and that, if *Harvey's* case, 129 Iowa 465, was followed (and that it should be), the damage aforesaid was permanent damage to the land, and therefore the measure of damage rule adopted by the trial court was right. For one thing, the dissent pointed out that the rule adopted by the trial court is the correct one, where the damages are permanent, as distinguishing from temporary injury, which is easily remedied. This statement in the dissent is not challenged in the majority opinion, and is generally supported in authority. It seems to be settled that only in cases of original and permanent injury to land is the measure of damages the difference in market value in the entire tract immediately before and after the injury; that this rule applies to an injury to the freehold, as distinguished from an interference with the comfortable use and enjoyment of the property. *City of Ottumwa v. Nicholson,* 161 Iowa 473; *Drake v. Chicago, R. I. & P. R. Co.,* 63 Iowa 302; *Sullens v. Chicago, R. I. & P. R. Co.,* 74 Iowa 659; *Harvey v. Mason City & F. D. R. Co.,* 129 Iowa 465; *Thompson v. Illinois Cent. R. Co.,* 177 Iowa 328; *Cumberland & O. C. Corp.*

*v. Hitchings,* 65 Me. 140; *Finley v. Hershey,* 41 Iowa 389, 394. A rehearing was granted. The second opinion was filed June 29, 1916, and is reported in 177 Iowa 328. Justice Ladd speaks for the court, and Justices Gaynor, Evans, and Salinger concur. It adopts the view of the dissent, and says:

"Manifestly, the injury, at least in part, was to the soil, and the measure of damages was the difference in its market value before and after the overflow."

This time it is held this rule is applicable without limiting to the particular part of the farm that was overflowed, and that the value of the entire farm is to be considered, where, from its location and levels, the part flooded could not be separated from the remainder of the farm. This, then, would seem to hold, not only that the measure is the right one because it is the one applied to permanent damage, but also that, in this case (the one urged as an estoppel), permanent damage is claimed and is recoverable. It would settle that it was the theory of the plaintiff (in the first suit) that his was a case of original and permanent injury. But all this is not without conflict.

Were it not for the *Thompson* decision just commented upon, there could be strong claim that, to say the least, it is doubtful whether, at the time the alleged diversion was caused, or when the first suit was tried, the injuries suffered were, in fact, original and permanent. Upon that question, there is at least a substantial conflict.

It does not follow that because a structure, say a sewer, is permanent in the sense that it will remain until human hands remove it, that all injury caused by such sewer is contemporaneous with the laying of the sewer, and is original and permanent damage. For what human hands build, they can change, improve, or remove. And as it is the duty of one who creates a nuisance to abate it, and as the nuisance may not at once cause actionable injury, it may well happen that the construction of something which should not be built, or not built as it was, may never be injurious, because changed before there is injury, or happen that injury which does occur is not permanent injury to land. *City of Ottumwa v. Nicholson,* 161 Iowa 473. And if one can cure and does not, every day's continuance of a nuisance is a repetition of the original wrong, and a new action will lie

therefor. As said in *Cumberland & O. C. Corp. v. Hitchings,* 65 Me. 140, when one wrongfully places an obstruction upon the land of another, he is under legal obligation to remove it, and successive actions may be maintained until he does or is compelled to remove it. It is said in the *Harvey* case, 129 Iowa 465, that the principle upon which a party creating a continuing nuisance is held liable to successive actions for damages is that he has a legal right, and is under legal obligations, to remove, change, or repair the structure or thing complained of, and thereby terminate the injury to his neighbor; and, failing so to do, each day's continuance of the nuisance is a repetition of the original wrong, and a new action will lie therefor. In *Jungblum v. Minneapolis, N. U. & S. R. Co.,* 70 Minn. 153 (72 N. W. 971), it is held that, where the injury arises because a culvert is improperly put in, there is no permanent construction in the way, and the injury is not due to any such construction, because the culvert *can* be properly constructed; wherefore, the injury complained of is not a permanent one, but grows out of a wrong which may be righted, and defendant has a right to remedy this wrong, and may do so at any time. This is said in *Town of Troy v. Cheshire R. Co.,* 23 N. H. 83, and approved in *Harvey v. Mason City & F. D. R. Co.,* 129 Iowa 465, 474:

"But where the continuance of such act is not necessarily injurious, and where it is necessarily of a permanent character, but may or may not be injurious, or may or may not be continued, then the injury to be compensated in a suit is only the damage that has happened."

That the thing constructed is permanent does not necessarily mean that the injury that may result is permanent. *Hughes v. Chicago, B. & Q. R. Co.,* 141 Iowa 273, 277.

In the *Harvey* case, 129 Iowa 465, 474, we approve the following from *St. Louis, I. M. & S. R. Co. v. Biggs,* 52 Ark. 240 (12 S. W. 331):

"When such structure is permanent in its character, and its construction and continuance are not necessarily injurious, but may or may not be, the injury to be compensated in a suit is only the damage which has happened, and there may be as many successive recoveries as there are successive injuries."

It is held, in *City of Ottumwa v. Nicholson,* 161 Iowa 473,

supra, that, if the injury was not contemporaneous with and did not arise immediately out of the wrongful act, the cause of action arose when the wrongful act produced the injury to the land, and not before. In *Sullens v. Chicago, R. I. & P. R. Co.,* 74 Iowa 659, the erection of a culvert did not make it follow that the damages arising were original and permanent. That was the holding in *Jungblum's* case, 70 Minn. 153 (72 N. W. 971), where it was claimed that the construction of a culvert worked an obstruction of a watercourse. And so of *Byrne v. Minneapolis & St. L. R. Co.,* 38 Minn. 212 (36 N. W. 339), as to the construction of a watercourse. The case of *Cumberland & O. C. Corp. v. Hitchings,* 65 Me. 140, says successive actions may be maintained where the obstruction is the wrongful filling up of a canal. And in *Harvey v. Mason City & F. D. R. Co.,* 129 Iowa 465, we ruled that, though a structure may be as permanent and enduring as the hand of man can make it, yet if the resulting injury be temporary or intermittent, depending on future conditions which may or may not arise, the damages are continuing, and successive actions will lie for successive injuries. We said, in *City of Ottumwa v. Nicholson,* supra, that, where the injury does not arise out of the wrongful act, immediately upon the doing of the wrongful act, then the cause of action arises only upon the happening of the injury, and the statute of limitations begins to run only from the happening of the injury. In *Van Orsdol v. B., C. R. & N. R. Co.,* 56 Iowa 470, we said that a right of action to recover for permanent injuries to land resulting from the negligent construction of a railroad thereon accrues at the time the first injury is sustained, and not necessarily from the date of the construction of the road. It was said in a note to *St. Louis, I. M. & S. R. Co. v. Biggs,* 20 Am. St. 174, at 176, that it is only ''when the original act creating a nuisance to land is permanent in its nature, and is at once productive of all the damage which can ever result from it, and at once destroys the estate for all practical purposes, so that when the act is completed all the damage that can be effected thereby is consummated, the entire damages must be recovered in one action, and the statute of limitations begins to run against the cause of action from the time of the complete erection of the nuisance.''

This, says Mr. Freeman in his note, is the consensus of the authorities. We said, in the *Harvey* case, 129 Iowa 465, that, where the injury from the alleged nuisance is temporary in its nature, or is of a continuing or recurring character, the damages are ordinarily regarded as continuing, and one recovery against the wrongdoer is not a bar to successive actions for damages thereafter accruing from the same wrong.

III. But it is not decisive that the damages claimed in the first suit were not *in fact* original and permanent damages. If the trial theory in the first suit was that recovery of damages of that character was the object of the suit, then there is an estoppel to say later that such was not the theory and the object. That would estop under the rule that prohibits inconsistent conduct in court, even if the first had not given plaintiff judgment which has been satisfied by payment. But there is no conflict in authority that a theory which obtains judgment and satisfaction may be asserted against relitigation of what was involved in a former suit on the theory of him who prevailed in that suit. This assertion need not be left to abstract reasoning, and is not a matter of first impression. If it can fairly be said that, in the first suit, Thompson proceeded on the theory that he was entitled to and was asking a difference in market value of his entire farm, the verdict and judgment estop him to sue again for injuries to the same land by the same wrong. The first suit will estop the prosecution of the second, although between the two suits additional damage has been done by the wrong complained of in the first suit. *Fowle's* case, 112 Mass. 334. It is said therein that the record in the first action shows that plaintiff was not limited to damages which had actually accrued before the date of the writ; that the smallest part included in the judgment was for such damages. In *City of Ottumwa v. Nicholson,* 161 Iowa 473, it is emphasized that the parties elected to treat the injury complained of as a permanent injury to the land itself, and that the evidence introduced was on that theory, as were the instructions offered and those given. As will presently be seen, that is the state of the record here. In *Noe v. Chicago, B. & Q. R. Co.,* 76 Iowa 360, the evidence was addressed to the theory of permanent damages to the land itself, and that fact is specially noted. It is ruled in the *Fowle* case, supra, that,

in the first suit, it was *possible* to recover for prospective as well as past injury, including subsequent damages, though caused by an unusual freshet. We said in *City of Ottumwa v. Nicholson,* 161 Iowa 473, that the 'rule deducible is that, if the condition wrongfully created is of a lasting character, and is permanent, and damage results which affects the value of the land, then, though all the damage has not yet made itself manifest, the landowner may *elect* to treat it as original injury, and recover damages, not only for the injury then caused in the depreciation of the value of his land, but for all injury that appears reasonably certain to result in the future as a proximate result of the erection and continuance of the nuisance; and that, where he elects so to treat the wrong, and a judgment is obtained in an action tried upon that theory, such judgment will be a bar to any further claim on his part for any further damages that may arise by reason of the continuance of the nuisance. It is said he is not required to so elect, for it is not always possible to anticipate and know what damages may result from the erection and continuance of the nuisance, but that he can elect. In the *Harvey* case, 129 Iowa 465, 476, it was conceded by this court that, in fact, the damages in that case were not original and permanent, but none the less we held:

"Although, if the claim for damages be made, and the action is tried on the theory that the damages are original, the parties will be bound thereby."

It is said in *Harvey's* case, 129 Iowa 465:

"It has also been held that the person injured may elect to treat the injury as permanent and recover original damages, and a judgment obtained in an action tried upon that theory will operate as a bar to any further claim for damages on account of the continuance of the nuisance."

In *Thayer v. Brooks,* 17 Ohio 489, 493, the question is said to depend upon the theory developed by the pleading of the plaintiff. We said, in *Risher v. Acken Coal Co.,* 147 Iowa 459, 461:

"Of course, where the injury is treated as permanent, and damages are asked once for all, no suit could afterwards be maintained for a continuing injury."

And, as said in *City of Ottumwa v. Nicholson,* 161 Iowa 473,

a party may not complain because the Supreme Court disposes of the case on the trial theory below.

### ·3-a ·

We have already stated that the record shows such election. To amplify: · On the first trial, testimony was received, against the objection of the railroad, as to the reasonable market value ''of your farm'' just prior to the rains of May 13, 1913; and answer was given by the acre. And like answer as to what was the reasonable market value of ''the farm'' immediately after it was inundated by that storm. Latta gave evidence on the market value of the Thompson farm, ''the 138 acres,'' just prior to the flood. Objection being made, the court inquired:

''What do you think the measure of damage is?

''Mr. Roadifer: My thought is that, in a case like this, where the farm is composed of small tracts and this hill land and farm land, the true measure of damages would be to the farm, because the farm would be more valuable separating it than not separating it. My real thought is, the true measure is as to the farm.''

And then the witness Latta gave the value per acre after the flood. The witness Mills was asked this:

''Taking into consideration that there is about 70 acres of upland and 68 acres of bottom land in that farm, if the upland was separated from the bottom land, would either of the tracts be ,as valuable as they are together as one part?''

Over objection, the witness said:

''I think it would go better together. Q. Taking into consideration your actual knowledge of the lay of this land and the farm itself and the general price, reasonable market price of that land in that vicinity, what, in your judgment, was the reasonable market value of the Thompson 138 acres just prior to the storm? A. $150 an acre. Q. What, in your judgment, was the reasonable market value of that land just after it had been flooded and ·inundated, or the bottom land between the foothills and the Latta ditch, being about 56 acres? A. Well, I think it would make $10 an acre difference in the selling price of the farm. (Ans. stricken.) Q. The question called for the market

value. A. I would say $140 an acre. The question of the likelihood of overflow affects the value of this land.''

There was like testimony as to impairment by the acre of the value of the 56 acres that were flooded. The dissent to which we have referred sets forth more testimony that indicated a purpose to obtain original and permanent damages. There was express claim for $1,500 for damage caused ''by the depreciation of the value of said real estate.'' The instructions charged that, if the waterways were insufficient, and thus there was an obstruction which caused the waters in the creeks, or either of them, to back up and overflow, damages should be given ''as damages for alleged injury to his land, the difference as shown by the evidence between the reasonable market value of his farm just before the flood in question and immediately after said flood.'' That is the measure that is correct only in cases of original and permanent injury to land.

We see no escape from the conclusion that the plaintiff elected to treat the first suit as a vehicle for recovery for permanent injury to his land, and sought to obtain payment on the basis that the value had been impaired for all time to come. True, plaintiff limited his second suit to a claim for loss by injury of a corn crop. But how can that change the election made in the first suit that recovery therein should be compensation for all injury to the land, past, present, and future? Injury to a growing corn crop is an injury to the land. It cannot be recovered for, because, in the first suit, plaintiff was paid a sum which equaled a very substantial reduction of the value of his farm for all time to come. Taking off, say, $10 to an acre was a taking off forever. It was sought as payment for whatsoever the identical wrong complained of in both suits would ever do to the land. It was the theory of plaintiff that he should be treated as having cheaper land, because the permanent and wrongful construction would injure his land at future times as it had in the past.

Many errors are complained of. Their consideration is obviously unnecessary, because of the decision we reach. The judgment appealed from must be—*Reversed.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.